OTTO LOCKE v INTERNATIONAL & GREAT NORTHERN RAILWAY
COMPANY.

Decided January 16, 1901.

**1.—Railway—Obstructing Highway Crossing—Contributory Negligence—Assumed
Risk—Question of Fact.**

A highway crossing over a railway being obstructed by a hand car, plaintiff,
in attempting to drive over the rails on one side of the planked crossing way, was
thrown from his wagon and injured through his team taking fright at the car,
on which some garments were hung. Held, that he had not assumed the risk as
matter of law, and the right to recover if his act were not found to be one of
contributory negligence should have been left to the jury.

**2.—Opinion Evidence—Safety of Act.**

Opinion evidence is not admissible as to the safety of an act where its char-
acter is determinable, not from expert skill, but from ordinary experience, as in
the case of one driving over a railway track at a place other than the planked
crossing.

**3.—Damages—Evidence—Enjoyment of Life.**

Loss of capacity for the enjoyment of the pleasures of life, though alleged as
a basis for damages, is too vague an element to admit of evidence to sustain it.

Appeal from Comal.  Tried below before Hon. H. Teichmueller.

*F. J. Maier,* for appellant.

*S. R. Fisher* and *J. H. Tallichet,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought by Otto
Locke against the appellee, the International & Great Northern Railroad
Company, for damages for personal injuries to plaintiff, sustained at
defendant's railroad crossing on a public road.  The court below directed
the jury to return a verdict for defendant, the railroad company, upon
the ground that the court construed the evidence to mean that the act
of defendant conplained of was not the proximate cause of the alleged
injuries, and that plaintiff, with knowledge of whatever danger existed,
assumed the risk and voluntarily exposed himself to such danger.

Verdict was returned for defendant, as directed by the court's charge,
and judgment rendered accordingly, from which plaintiff has appealed.

The testimony of plaintiff is that he lives one mile west of New
Braunfels, in the city limits; that he is a nurseryman and a farmer;
that only one road leads from New Braunfels to his home.  It crosses
the bridge at Landa's mill, and then goes southward across defendant's
railroad track, about one mile from town, in a lane.  He was driving
home from town with a wagon and team of two mules.  There were
no gates on either side of the railroad, so that he could not drive through
the fence and thus go around the crossing, and there was no other way
of reaching his home with the wagon and team, other than to drive over
the crossing on the railroad.  He had been to town with a load of trees,

and between 3 and 4 o'clock in the afternoon was driving back home. When he reached near the crossing he saw there was a handcar in the middle of the crossing on the side of the railroad track in the public road, on the side of the track nearest his house. The handcar stood only a few feet from the track in the traveled road in the lane. He saw the handcar when he entered the lane, and drove on until he got near the crossing and stopped about 20 feet from the crossing. He saw the section boss and hands working about 300 steps east, and motioned to them with his hand, but they took no notice, but he did not know whether they saw him or not. There was no room in the road to pass the handcar with his wagon. There were some bars of iron and tools on the ground, and on the right side of the crossing there was room enough to cross over the track, about sixteen feet from the handcar to the fence, and plaintiff drove across there over the railroad track. It was level ground, and he testified that he could drive over there without harm, or it appeared so to him. The crossing was about twelve feet wide, and to drive around the handcar he had to go off the crossing. His wagon was empty,—a good new farm wagon and strong team of mules and new harness, and he says it looked to him as if he could cross over; and the mules he says were gentle, and he drove around railroads daily with them, hauling trees to the depot for shipment, and he had handled mules and horses for many years and understood driving horses and mules. There were some clothes hanging on the handles of the handcar, coats or shirts or slickers; and as he drove over the track around the handcar, and as the mules got near it, the wind blew and waived the clothes. The mules reared and jumped to the right and forward, and the wheels of the wagon went over the rails and the jolt threw plaintiff out on the right side of the wagon, and the team went on about fifty yards, the hind wheel having caught the lines and stopped the team. The lines caught his wrist and he was dragged and injured as alleged. The line was not tied or wrapped around his wrist while he was driving but got wrapped as he got out. He was dragged until the team stopped. He says: "When I fell out of the wagon it skinned off my whole face. I was hurt in the back and one ear was nearly half off." He further relates his injuries, sufferings and confinement and inability to work as he formerly had,—budding, grafting, and the like.

The crossing he states was about twelve feet wide, and extended about ten feet on each side of the railroad track. There was no obstruction in the crossing when he drove to town after dinner. At the time of the accident he was sitting on the spring seat of the wagon, which was about twelve inches above the wagon bed or more. It was not a spring wagon, but a regular farm wagon, drawn by two mules. He could see the handcar when he got into the lane, but he went on to within thirty or forty feet of the track, as he states on cross-examination, but not quite to the crossing; but he could see the handcar and the tools lying on the side of it, and there was nothing that kept his mules from seeing it. With the

handcar where it was he could not drive on the plank crossing. There was ample room to drive between the fence and the crossing. Where he attemptd to cross, the ties were exposed outside the rails, with no dirt between them, but between the rails dirt was was filled in between the ties. The ties are six or seven inches thick, and the rails four or five inches, and he testified that he had to drive across the rail at that point over the obstruction the depth of the rail and the tie combined, and he saw the condition of affairs before he attempted to cross; saw the handcar and the slickers and his mules could see them, as there was nothing to obstruct the view. When he was in the act of crossing, he says on cross-examination, a sudden wind came up and flopped the objects on the handcar and made the mules scare, when they jerked off to the right so violently as to throw him off on the ground. He also testified that he could have stopped there and come back to town, but that he had no time to do that.

The testimony of Max Fricker corroborates plaintiff's testimony as to the drive across the track and the accident. A train passed on the road at this point about half an hour before the accident, and a second train passed about the time plaintiff's team stopped and was tied, but the train was not in sight when the injury occurred, and had nothing to do with the injury. The testimony does not show but that the handcar might have been put off the track at other points close by the crossing.

*Opinion.*—1. The assignment of error to the effect that the testimony warranted the submission of the case to the jury and that the court erred in peremptorily directing a verdict for defendant, is well taken and is sustained. The question as to negligence of defendant in placing the handcar across the public road, so as to obstruct the travel and interfere with plaintiff's right to the use of the dirt road and bridge, and the question as to whether or not he was guilty of contributory negligence, under the circumstances, in attempting to cross the railroad track where there was no bridge, were questions of fact for the jury and not for the court to decide.

A jury would be authorized to find that defendant had no right to so obstruct the public road with its handcar as to prevent its use by plaintiff with his wagon and team, and that it was guilty of negligence in so doing. Yet it is true, if plaintiff was also guilty of negligence under the circumstances, which contributed to his injuries, he could not recover, notwithstanding the company may have committed a wrong in obstructing the road. But this question should have been left to the jury. Judge GAINES, now Chief Justice of the Supreme Court, in the case of Railway v. Gasscamp, 69 Texas, 547, says: "According to the rule in this court, in order that an act shall be negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it." The same opinion, after discussion of the law as decided in other courts, proceeds:

"Whether the act be negligent or not depends upon the circumstances attending it, and the question is for the determination of the jury."

The care required of plaintiff was ordinary care and prudence, and this was for the jury to determine from the facts and circumstances under proper charge of the court submitting the question to them. "The test is, what would a man of ordinary prudence have done under the same circumstances." Railway v. Able, 72 Texas, 155, 156; Railway v. Bridges, 16 Texas Civ. App., 64; Conzales v. City of Galveston, 84 Texas, 6. (The citation in the last above case to Railway v. Clark, 81 Texas, 48, is an error; it should be O'Connor v. Andrews, 81 Texas, 36.)

Appellant has cited a great number of cases decided by the courts of this State and of other States, many of which are pertinent to the question and sustain his assignment of error, but it is not necessary to review them, as we are content with what has been said and the authorities we have cited.

2. There was no error in excluding the testimony of the opinion of witness Fritz Gerloff, that one could with safety make the drive across the railroad track where plaintiff went over, he being an experienced driver, having gentle mules and a good wagon. The opinion of a witness, even though he may be competent to testify as an expert, as to matters in the ordinary experience of men, is not admissible. The jury is deemed fully capable of deciding the question without the aid of opinion witnesses. All the facts were before them and it was their duty to decide whether or not plaintiff was guilty of contributory negligence and might have undertaken to drive over the railroad track with safety with his wagon and mules. Shelley v. City of Austin, 74 Texas, 611, 612.

3. There was no error in excluding the testimony of plaintiff as to loss of capacity for "the enjoyment of pleasures of life." The matter, though pleaded, is too vague to furnish any information upon a definite subject upon which damages would arise or be allowed.

Because of the error in the charge instructing the jury to find for defendant, the judgment of the lower court is reversed and the cause remanded for trial.

*Reversed and remanded.*