**GALVESTON ELECTRIC CO. v. BIGGS.**
(No. 9251.)

Court of Civil Appeals of Texas. Galveston. Jan. 31, 1929.

Rehearing Denied Feb. 28, 1929.

·Terry, Cavin & Mills, of Galveston, for appellant.

Stewart, Damiani & Harris and Brantly Harris, all of Galveston, for appellee.

GRAVES, J. Appellee, as plaintiff, sought a $15,000 recovery for injuries, pain, suffering, and permanent disability, together with $1,000 for medical attention, all alleged to have been sustained by her while a passenger on appellant's street car in the city of Galveston, as a result of these acts of negligence:

"Plaintiff further alleges that at the time and place of said injury, as aforesaid, defendant did not manage and operate its road and its car with reasonable care, skill and diligence, but on the contrary, managed and operated same with gross negligence and carelessness in the following particulars, among others, which directly and proximately caused said collision and injuries to the plaintiff:

"(a) Defendant, through its agent, the motorman in charge of said car, failed to keep a lookout and ran into and collided with a street car belonging to defendant.

"(b) Defendant, through its agent, the motorman, negligently and carelessly ran into a street car belonging to defendant.

"(c) Defendant's agent, the motorman, failed ·to give proper care to the operation and running of said street car, but on the contrary, had diverted his attention from said car, and was reading a card and not keeping a proper lookout ahead.

"(d) Defendant's agent, its motorman, was negligent in that /its car was not equipped with proper brakes.

"(e) Defendant was negligent in that its motorman was operating said car at an excessive rate of speed under the circumstances.

"(f) Defendant was negligent in that its

agent operating the stationary car stopped said car without giving proper signals and without warning defendant's agent operating said car on which plaintiff was riding, that said car was blocking the track."

In addition, a contractual obligation, in return for valuable consideration paid, to safely transport her, was charged to have been made and likewise violated, without fault or contribution thereto upon her part.

The injuries claimed were, in substance: Being violently thrown to the floor of the car against iron posts and left in a mangled and bruised condition, her right elbow lacerated, back wrenched and sprained, and bone in the left leg so crushed and permanently hurt as to make her a cripple for life; that, in consequence, she had suffered great pain, would not for some time to come be able to work at all, nor ever again to do any that required her to stand up or walk about, as she had been doing, and at which she had been earning $20 per week, prior to her injury; that her future earning power had permanently been much impaired.

On conclusion of the evidence, the court, finding appellant guilty of negligence that proximately caused the collision and resulting injuries, granted plaintiff's motion to withdraw that issue from the jury, and submitted only the question of the amount of damages, if any, to which she had shown herself entitled. Thereupon, a verdict in her favor for $4,250 was returned, and judgment followed accordingly.

After the defendant's motion for new trial, which, among other grounds, alleged misconduct on the jury's part (1) in having discussed attorney's fees for plaintiff without evidence thereon, and (2) in having added something to their verdict for "future pain and suffering" contrary to the court's charge, had been heard but before it was acted upon, the plaintiff, in deference to the court's suggestion that he thought the verdict for a greater sum than $2,118 tainted by the jury's improper discussion of the attorney's fees, and that if she would remit it down to that amount he would overrule the motion but otherwise grant it, filed a remittitur reducing the verdict to $2,118; an order overruling the motion was then entered, under these stated findings of fact:

"First: That upon retiring to the juryroom to consider their verdict the jury read the Court's charge on the measure and elements of damage and proceeded to determine in the order in which said elements appeared in said charge, the amount of plaintiff's damage on each of said elements; that it was agreed plaintiff was entitled to recover her doctor's bills in the sum of $493.00; that for the loss of earnings from the time of the accident until the time of the trial, she was entitled to recover the sum of $625.00; that for pain

and suffering from the time of the accident to the time of the trial, and for diminished capacity to earn money in the future, she was entitled to recover the sum of $1000.00, making a total of $2118.00, which said sum of money it was agreed reasonably compensated the plaintiff for those elements of her damages as covered by the Court's charge.

"Second: That after this compensation was arrived at and agreed to, it was mentioned by some of the jurors that plaintiff would be required to pay some portion of her recovery to her attorneys, and that in order to give plaintiff the full amount of her damages of $2118.00, the jury should add sufficient to this sum to enable her to pay her attorneys their fee and leave plaintiff the said sum of $2118.00; that considerable discussion was had in the juryroom as to what this added amount should be, and finally the sum of $4250.00 was arrived at. I find that at least three of the jurors would not have consented to a verdict in excess of $2118.00 but for the discussion relative to attorney's fees.

"Third: I find as a fact that in arriving at said sum of $2118.00 none of the jurors discussed or considered that any portion thereof was for 'future pain and suffering,' as alleged in defendant's said amended motion for a new trial, but that said sum was arrived at as found in paragraph 1 hereof.

"Fourth: I find that portion of the jury's verdict tainted with the juror's misconduct is capable of easy and definite ascertainment, and accordingly I suggested to plaintiff that if she would remit the judgment down to said sum of $2118.00 I would overrule the motion for new trial, otherwise same would be granted."

Appellant, conceding that the remittitur removed all possible taint as concerned attorney's fees, under its propositions X to XV, inclusive, assails the judgment on the contention that the entire verdict was vitiated by misconduct of the jury in allowing some damages for "future pain and suffering," when such element of damage was neither alleged nor covered by the court's charge, in that the evidence clearly disclosed, not only that there was discussion in the jury room touching that question, but also that it was at least reasonably doubtful as to whether or not Juror Foster's verdict was influenced thereby, in that he swore he allowed $1,000 on that account.

■ It is true that the appellee neither in her petition sought a recovery for "future pain and suffering," nor did the court's charge permit it to be considered, wherefore it was an improper element.

■ But, in the quoted order overruling the motion for new trial, the learned trial court has made a finding of fact that none of the jurors discussed or considered that any portion of the $2,118 allowed was for "future pain and suffering," and, a careful reading of the statement of facts disclosing that there is clear support for it in the testimony, this court is bound thereby. Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Moore v. Orgain, writ of error refused (Tex. Civ. App.) 291 S. W. 583; Sandifer v. Bank (Tex. Civ. App.) 8 S.W.(2d) 512.

■ Although four were examined, the juror named was the only one who testified to any such discussion or consideration, others affirmatively saying it did not occur; even he seems to have at least confused in his mind the element of disability to earn money, which was a proper one under both pleading and charge, with the tabooed one for "future pain and suffering," because he also swore "that $1,000.00 was agreed on by all as representing any pain or suffering, or disability right up to the time of the trial," and "I will state that at the time we added the $1,000 to make up the $2,118.00, if I had felt that she was not entitled to any compensation for future pain and suffering, but that she was entitled to compensation for diminished capacity to labor and earn money in the future, *I would still have felt that she was entitled to that $1,000.00.*"

In any event, we find nothing shown in this matter, under all the evidence touching it, even tending to indicate that the trial court abused its discretion in refusing to grant a new trial on account of it.

■ The $493 allowance for medical bills is attacked as lacking the necessary support of a pleading that the amount sought on that score was a reasonable, necessary, or customary charge for the service claimed. The allegation on this feature was: "Plaintiff alleges that by reason of the premises and by reason of said pain and suffering, she has sustained damages in the sum of $15,000.00 and that she has been forced to incur bills for medical attention in the sum of $1,000.00."

Appellant interposed no special exception to this averment, although it did object to the testimony received in support, on the ground that the pleading did not set out that the bills were reasonable, customary, and proper. The court charged with reference to it: "In arriving at your answer to this question you may take into consideration the bills, if any, necessarily incurred by her for medical attention, made reasonable by reason of the injuries, if any, sustained by her in said collision not exceeding the sum of $493.00. In determining the amount of medical bills, if any, incurred by plaintiff, you can only allow bills in such sums as you may find from the evidence were necessary and customary and reasonable for the services, if any, performed."

In these circumstances, there was no reversible error in receiving the testimony and allowing the recovery. Texas & Pac. Ry. Co. v. Lee, 21 Tex. Civ. App. 174, 51 S. W.

351, writ of error refused 21 Tex. Civ. App. 174, 57 S. W. 573; G., H. & H. R. R. Co. v. Greb, 63 Tex. Civ. App. 78, 132 S. W. 489; Dickey v. Phœbe Jackson (Tex. Com. App.) 1 S.W.(2d) 577.

■ Complaint against the verdict is further made as having been excessive, to the extent of the $1,000 allowed for "future pain and suffering," the $493 for medical bills, and generally "in view of the testimony as to the character and extent of appellee's injuries, such injuries not being shown to have been of such nature or gravity as to justify damages in the sum found."

This too, we think, is without merit. What has already been said disposes of this objection with reference to the first mentioned two items, since in deference to the trial court's finding, we must assume no allowance was made for future suffering, and since the evidence just referred to, if admissible, fully sustained the amount of the bills incurred for medical attention as having been reasonable, customary, and proper for the service actually shown to have been rendered.

On the general issue as to the extent of the appellee's injuries, the testimony was sharply in conflict, but there was in it ample support for the remaining $1,625 recovered: the fact of the accident and consequent injury were directly proved; the collision occurred in February of 1927, and the appellee testified on this trial a year later that she had never been able to work since, dance, play tennis, walk for any considerable time, or do many other things she had before been accustomed to doing, having all that time both suffered pain and been under the constant care of her physician; her physician, a high-class one of experience, who was then connected with the Medical Department of the University of Texas, testified that when she came to him in February of 1927, he found an injury to the bone itself of her left leg, called periostitis, which he had continued to treat up to the time of this trial, saying also in that connection: "My present bill for services rendered to this young lady for injuries to her leg is $443.00," and he was still treating her every day.

It is deemed unnecessary to further detail the testimony, it being plainly sufficient to have supported findings by the jury that the injury to the leg had been caused by the collision complained of, that it had persisted with the attendant consequences mentioned to the time of the trial, was still serious and incapacitating to the extent the appellee then said it was, and that it might permanently remain so, if indeed it did not go into the more serious condition the physician termed "osteomyelitis."

Obviously, under such a state of evidence, an appellate court could not properly hold the moderate amount permitted to stand excessive.

■ There but remain for disposition the first six propositions, through which it is in substance urged that: The court erred in instructing the jury that appellant was negligent, and should have submitted that question to them, despite the fact that it did not so request—such action not being incumbent upon it—because the appellee neither conclusively nor even by a preponderance of the evidence proved any of the specific acts of negligence she alleged; her general averment of negligence being insufficient, and her own testimony as to any specific act being uncorroborated.

Here again we must differ with the presentment made; appellant offered no testimony at all, hence there was no rebuttal of that received in support of the case declared upon.

It would be a work of supererogation to recount that evidence; the fact, time, place of, and consequent fall of the appellee from, the accident—if not indeed the substantial manner of its occurrence—were all proved in reasonably near conformity to the allegations made by the direct testimony of the appellee herself, corroborated by that of another passenger upon the same street car, a Mr. Picard; this general summary, taken from the appellee's brief, is not an overdrawn statement of what was shown: "So from all the evidence, we have the positive direct evidence of the girl that she saw the motorman at the time of the collision, that he was reading the card, and had his head down. This evidence is corroborated by the fact that a street car, with no obstructions whatever, ran into another street car on Twenty-First and Avenue Q, which was in plain sight, as shown by the evidence of Mr. Picard. Certainly the corroborative evidence of the facts and circumstances are sufficient, taken with the clear and unequivocal testimony of the plaintiff to establish the case, there being no rebuttal whatever by defendant, and there being no calling of defendant's motorman or conductor to testify, and all the facts and circumstances corroborating the testimony of plaintiff."

A careful review of the statement of facts has convinced us that the learned trial court did not err in the action here challenged.

These conclusions require an affirmance of the judgment; that order will be entered.

Affirmed.