No. 32,968

Frances Gardner, *Appellee*, v. Walter R. Leighton and H. E. Mongold, *Appellants*.

(58 P. 2d 1111)

Opinion filed July 3, 1936.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton,* all of Salina, for the appellants.

*W. S. Norris, Roy A. Smith* and *Homer B. Jenkins,* all of Salina, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This is an appeal from a judgment for damages on account of personal injuries sustained by plaintiff in a collision of motor vehicles on a public road.

A township highway runs east and west at some distance west of Salina. An abandoned railway grade crosses this highway diagonally from southeast to northwest. This old railway grade constitutes a slight ridge which is covered with grass, scrubby trees, and brushwood. At the intersection of the township road and the old railway grade the traveled width of the highway is about twelve feet, and the railway grade is cut down about three or four feet below its prevailing height.

For about a month preceding the accident the defendant, Leighton, and his truck driver, Mongold, had been hauling dirt from a field south of the road and west of the old railway grade. Immediately west of the railway grade was a sort of private road which entered the public road. Robert Muir, the owner of the field, testified:

"It isn't a road, it is just a means we use to get into the field that we use occasionally. In the summer of 1934 I permitted Mr. Leighton [defendant] to take some dirt out of the south field west of the railroad embankment."

Another witness described the private road and its entrance into the public road thus:

"I am familiar with the place on the road which runs west from the back

end of the military school where a railroad grade crosses it about half or three quarters of a mile west of Ninth street; I hauled some wood out of there from Mr. Muir's ground south and west of this embankment; I am familiar with the little side road which comes into the main road from the west side of the embankment; . . . the road I am speaking of is the one which runs along the west side of that embankment; it runs at an angle from the southeast to the northwest; the railroad grade south of the main road . . . is high enough so that a car or an automobile on the west side of the embankment could not be seen from the east by anyone over and east of the embankment; . . . it . . . ran generally in the same direction as the embankment; when you drive a car out of there, in order to permit you to make a turn, I had to use pretty near all the road, and get over on to the north side before I turned east. It is a sharp turn from the side road into the main road; the field where the side road is, is four or five feet lower than the main road; the rise that comes up from that field into the main road is quite an embankment; you have to come right up that to get on to the main road."

On the evening of July 27, 1934, the plaintiff, who was then about 72 years old, was riding westward in an automobile on this township road. She was in the front seat beside her daughter who sat at the wheel. Plaintiff held a baby in her lap. In the rear seat were a Mrs. Benz and two small grandsons of plaintiff. The automobile containing plaintiff and these other persons was proceeding westward on this township highway at a speed of thirty miles per hour. They had no notice or knowledge of this private road which entered the highway from the south immediately west of the old railway grade. When the automobile was about 100 feet east of this private road an old Dodge truck loaded with three tons of dirt suddenly and unexpectedly came into the highway out of Muir's field. The usual result happened. Truck and automobile collided. Plaintiff was thrown from the automobile and suffered serious, painful and permanent injuries.

Plaintiff's petition pleaded the pertinent facts and prayed judgment for damages against Leighton and Mongold. Their answer contained a general denial and pleaded contributory negligence on the part of the driver of the automobile and on the part of plaintiff herself.

The evidence ranged about the width of the road, the direction of the truck immediately upon entering the highway, the distance in which the automobile could be stopped, and details of that sort. It was not contended that defendants' truck could be seen as it was approaching the highway from Muir's field west of the old railway grade. Nor was there any sign or warning that a road of any sort entered the highway thereabout.

The jury returned a general verdict for plaintiff and answered special questions, some of which read:

"1. Was the plaintiff, Frances Gardner, guilty of any negligence which caused or contributed to her injuries? A. No.

"3. In what direction was the defendants' truck headed at the time of the collision between the truck and the Smith car? A. Northeasterly.

"4. Did the defendant Mongold drive the Leighton truck suddenly and without warning onto the road in front of the Smith car? A. Yes.

"6. Was the Leighton truck completely on the main road at the time of the collision? A. The truck was not completely on the main traveled portion of the road.

"10. Did the defendant Mongold drive up onto the highway upon a low gear and at a speed not to exceed five miles per hour? A. Yes.

"13. Was there sufficient space for the car to safely pass the truck on the north side of the highway grade? A. No.

"14. Could the plaintiff have seen the truck when she was about one hundred feet distant therefrom? A. Yes.

"15. Did the driver of the car drive on the south side of the center of the highway up to about fifteen feet of the truck? A. Yes.

"16. What, if anything, did plaintiff say or do to avoid the collision? A. She did nothing.

"17. At what rate of speed was the car in which plaintiff was riding being driven at a distance of one hundred feet east of the place of collision? A. About 30 miles per hour.

"18. Could the driver of the Oldsmobile automobile, after she saw or could have seen the truck, by the use of ordinary care, have stopped her car before it reached the truck? A. No.

"19. Could the driver of the Oldsmobile, after she saw or could have seen the truck, by the use of ordinary care, have turned to the north side of the highway and avoid[ed] colliding with the truck? A. No."

Most of the special findings were attacked in a motion to set them aside. This motion was overruled, as likewise were defendants' motions for judgment *non obstante* and for a new trial.

Judgment was entered on the verdict and defendants assign various errors, contending, first, that findings 18 and 19 are contrary to the evidence. This contention is based on some expert testimony of defendants' witnesses that the automobile which was traveling at 30 miles per hour could have been stopped in a space of 73 feet from the moment the truck first appeared on the highway. At that moment the automobile was 100 feet distant. According to that testimony it could have been brought to a stop about 17 feet from the point of collision. An automobile going 30 miles per hour travels 44 feet per second. It would travel 73 feet in 1.6546 seconds. It would travel the remaining 17 feet in .3863 of one second. That

is to say, if this 72-year-old-woman had had her eyes glued to the road, alert to discover such an unlikely occurrence as the sudden appearance of defendants' truck in the highway from an unknown side road, she would have had something like two fifths of a second in which to warn the driver, for that warning to register in the driver's cerebrum, for the driver to take her feet off the accelerator and to apply the brakes. This is altogether too small a margin of time in which to allow plaintiff and the driver of the automobile to do all the acts requisite to clear themselves of the charge of contributory negligence. Certain it is that no court should say as a matter of law that their failure to act within that small margin of time and distance was contributory negligence. Moreover, the testimony that an automobile going at 30 miles per hour could be stopped in 73 feet merely applied to test conditions and where the experts would know in advance that they were to slam on their brakes when their cars were going at that speed. One of these expert witnesses who testified from his own experience, and not out of a book, was a husky six-footer who weighed 195 pounds. This witness admitted that an automobile could be more quickly stopped when testing the efficiency of its brakes than in ordinary driving conditions.

Defendants emphasize the fact that plaintiff's automobile was traveling on the south side of the road. True, but the used portion of the road was only about 12 feet wide in that vicinity. Moreover, when a motorist, so far as he can see, has the entire road to himself, he may travel on any portion of it, in the middle, or on either side. (*Pens v. Kreitzer*, 98 Kan. 759, 160 Pac. 200; *Zinn v. Updegraff*, 113 Kan. 25, 32-33, 213 Pac. 816; *Watkins v. Byrnes*, 117 Kan 172, 174, 230 Pac. 1048.)

The contention that findings 18 and 19 were contrary to the evidence cannot be sustained.

It is argued next that defendants were entitled to judgment on the answers to findings 14, 15 and 16. This argument is virtually a repetition of the one used against findings 18 and 19, which we have just considered. Only 2 3/11 seconds elapsed between the moment the truck entered the highway and the collision. Whether it was contributory negligence for plaintiff not to discover the truck at the precise moment of its unexpected appearance from behind the old railway embankment and for her not to warn the driver within that brief interval of time was certainly not a question of law. (*Brunson*

*v. Shell Petroleum Corp.*, 137 Kan. 133, 19 P. 2d 455; *Link v. Miller*, 133 Kan. 469, 300 Pac. 1105.) Whether a jury's finding to that effect would be justified we need not consider. One of the cases relied on by defendants is *Ferguson v. Lang*, 126 Kan. 273, 268 Pac. 117, where a passenger in an automobile was barred from a recovery for damages she sustained in a collision because of her contributory negligence in failing to warn the driver of a speeding automobile approaching the highway from another road which entered it from the left. The circumstances are not at all alike. There the plaintiff could have seen the speeding automobile before it entered the highway; and there was a *known* road entering the highway from the left which anybody could see. Here plaintiff could not see defendants' truck as it approached the highway; and here there was no *known* side road, either private or public, which would have prompted plaintiff to be on the *qui vive* for vehicles entering the highway where this collision occurred.

It is also suggested that plaintiff was engaged in a common enterprise with the driver of the automobile. Perhaps so. There was no finding on that point; and even so, it is far from clear that the driver was negligent under the circumstances of this accident.

Finally it is urged that findings 5 and 14 precluded the rendition of judgment in favor of plaintiff. Finding 14 is set out above. No. 5 was a finding that the old railway embankment prevented the driver of the automobile from seeing any portion of defendants' truck before it reached the road. We cannot follow the argument of defendants that these findings either justified or required that judgment be withheld from plaintiff.

No substantial error is discovered in this record, and the judgment is affirmed.

BURCH, C. J., not sitting.