No. 33,968

J. ABBIE CLARKE HOGAN, *Appellee,* v. THE SANTA FE TRAIL TRANSPORTATION COMPANY, and THE STANDARD ACCIDENT INSURANCE COMPANY OF DETROIT, MICHIGAN, *Appellants.*

(85 P. 2d 28)

Opinion filed December 10, 1938.

C. L. Hoover, of Junction City, John W. Blood, F. W. Prosser and C. Zimmerman, all of Wichita, for the appellants.

James V. Humphrey and Arthur S. Humphrey, both of Junction City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover for property damages and personal injuries resulting from a collision of motor vehicles. Judgment went for plaintiff, and the defendants, the Santa Fe Trail Transportation Company, a common carrier, and its insurer, the Standard Accident Insurance Company of Detroit, Mich., appeal.

Numerous assignments of error are alleged. We shall first treat the contention the demurrer to plaintiff's evidence should have been sustained. This requires a review of plaintiff's evidence. Briefly stated, the material portion thereof was substantially as follows: Plaintiff was traveling from Junction City to Pittsburg. The accident occurred in the daytime of March 13, 1937, on federal highway No. 59, after plaintiff had left Princeton. This highway runs generally in a northerly and southerly direction, but the accident occurred on a mile stretch of road which runs east and west. This mile of road was on a level tract of land. It was snowing. The wind was from the north and it had driven the snow from the north edge of the pavement with the result that side was mostly free from snow. The snow had drifted into the south ditch and had also covered the south side of the highway sufficiently to make driving there difficult. Plaintiff could see the entire distance of the one-mile stretch. When she entered on that stretch no other vehicle was on it. Observing this condition, she drove on the north or on her left side of the highway. After proceeding about a half mile she observed the truck of the defendant transportation company coming west at the end of the mile stretch. She then again tried the south or right-hand side of the road and again found driving difficult there and returned to the north side until she got nearer the truck. She continued to watch the truck and decided to turn back to the south side in time to permit the truck to pass. While the truck was on the north side and 200 feet east she turned to cross to the south side. When she turned southeast the truck was still on the north side of the road. By reason of the snow-covered condition on the south side she was obliged to give her attention to that side of the road as well as to the truck. This she did. Her testimony was:

"A. I had to keep one eye or the corner of my eye on the edge of that pavement, on the north side of that pavement, all the time.

"Q. Well, that is what you did? A. But I saw the truck. I never missed it. I had the truck in my mind, in my eye, all the time."

In attempting to reach the south side she drove two feet over on the right shoulder. After getting over to the south side and "straightening out," she looked up and the truck was about thirty feet away. The truck was, in her own words, "coming down on my side of the pavement, right at me, diagonally across, clear across the pavement, so that I couldn't get by it on either side." Defendant's vehicle consisted of a truck and trailer. Plaintiff was driving her car about twenty-five miles per hour. The road was snowy and slippery. The truck was being driven at least thirty-five miles per hour.

A. N. Affolter, a farmer and filling-station operator, who lived just around the bend at the east end of this mile stretch, testified in substance: He went to the place of the accident a half or three-quarters of an hour after it occurred. In that time there was no change in the weather conditions. When he got to the slab his view was unobstructed to the scene of the accident. He could see the road the entire distance of the mile stretch. When he reached the place of the accident the front wheels of the truck were in the south ditch, and the hind wheels of the semitrailer were partly on the slab. The truck was facing southwest. The position of plaintiff's car had been changed by that time.

There is no dispute, however, about the fact that the collision occurred on the south shoulder of the highway. There is no question concerning the fact there was property damage and that there were personal injuries. The extent of the damage will be treated later.

Did the court err in overruling defendant's demurrer to plaintiff's evidence? On this question the trial court adopted plaintiff's contention that the question of the truck driver's negligence and plaintiff's contributory negligence were jury questions. Plaintiff's contention was in substance: Considering the conditions of the road she had a right to travel on the north side, providing she moved over in sufficient time to permit the truck driver to pass; the latter knew or should have known the conditions of the road, and the difficulty of traveling on the south side; he should have slowed down when he saw plaintiff's difficulty in traveling on the south side; the truck driver had the right to assume plaintiff would endeavor to reach the south side in time for him to pass; plaintiff turned to the south side

while the truck driver was still on the north side of the road and when 200 feet away; the truck driver could have passed on the north side; if the truck had been under proper control and the driver of the truck had kept his view on plaintiff he would have seen the plaintiff turn to the south and could have avoided running into her car on the south shoulder of the highway; plaintiff was guilty of no contributory negligence, but in any event the question was for the determination of the jury.

The pertinent statute now touching the subject of travel on a certain side of the road, namely, section 37, chapter 283, Laws of 1937, was not in effect at the time of the collision and need not be considered. That a driver, so long as he has the road to himself, for a distance as far as he can see, may travel on any portion thereof, has been definitely determined. (*Gardner v. Leighton,* 144 Kan. 335, 338, 58 P. 2d 1111, and cases there cited.) Whether plaintiff, under all the circumstances, moved over in time for defendant to pass, and whether the driver of the truck exercised the proper degree of care before plaintiff started to turn south, and whether both parties exercised the proper degree of care after plaintiff had started to turn south, cannot be said to constitute questions which can be answered as a matter of law. They were proper questions for the determination of the jury. Touching the demurrer, defendants stress mostly the alleged contributory negligence of the plaintiff. In numerous cases we have said in substance what was again recently said in *Jones v. McCullough,* 148 Kan. 561, 85 P. 2d 669, as follows:

"In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross-examination, and, if so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled.

"In determining whether a plaintiff is guilty of contributory negligence, when tested by demurrer or on motion for a directed verdict, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon." (Syl. ¶¶ 1, 2.)

The application of these principles to the facts in the instant case requires us to affirm the ruling on the demurrer.

The special verdict of the jury was as follows:

"1. Was the plaintiff on the north or defendant's right-hand side of the road just shortly prior to the accident? A. Yes.

"2. How far was plaintiff from defendant when she turned to the south side of the road? A. 200 feet.

"3. Did defendant driver turn to south side of the road before or after plaintiff turned to the south from the north side of the road? A. After.

"4. Was the driver of truck, when approaching plaintiff, driving too fast under the known conditions then existing? A. Yes.

"5. If you answer the last above question 'yes,' was it negligence on the part of the driver to drive at the rate of speed he was then driving? A. Yes.

"6. Did the driver of the truck negligently drive the same, or negligently permit the same to run, onto his left-hand side of the highway? A. Yes.

"7. Did plaintiff drive onto her right-hand side of the road in seasonable time to permit the driver of the truck to continue on his right side without collision? A. Yes.

"8. Did plaintiff know that the truck was driven onto her right-hand side before it was too late for her to avoid the collision? A. No.

"9. If you find that the driver of the truck was negligent, either because he was driving too fast, or by driving or permitting his truck to run onto the south side of the road, then was such negligent act a substantial factor in producing the collision? A. Yes.

"10. Was plaintiff guilty of any negligence which was a substantial factor in producing the collision? A. No.

"11. If you find for plaintiff, how much do you allow—
    (1) For damages to the car? A. $155.43.
    (2) For expenses from the time of the accident to plaintiff's arrival home? A. $19.15.
    (3) For doctor bills? A. $100.
    (4) For pain and suffering? A. $1,000.
    (5) For loss of earnings? A. ———.
    (6) For loss of enjoyment from being unable to play the violin? A. $4,000.

"12. How close was plaintiff to defendant when she noticed that he was on the south side of the road? A. 40 feet.

"13. What were the earnings of plaintiff for one year preceding the accident? A. Not any.

"14. Did the negligent acts of Mrs. Hogan contribute to cause the accident? If you answer in the affirmative, state how. A. No.

"15. Do you find the driver of the truck guilty of negligence? If you answer in the affirmative, state what the negligence consisted of. A. Yes. He was negligent in not making sure that car of plaintiff was not moving. Also on crossing onto south side of road. Driving at too great a speed, considering condition of road and weather."

Plaintiff complains concerning the wording of some of the special questions. No objection was made thereto at the time of the trial and a complaint at this time is too late.

Complaint is made concerning certain instructions on the ground they indicated the defendant was at fault. The instructions are not subject to that complaint. Objection is made certain instructions

were not adequate. No fuller or more complete instructions were requested and no objection was made to those given. Under such circumstances no reversible error exists. (*Skaer v. American Nat'l Bank*, 126 Kan. 538, 541, 268 Pac. 801; *Birdsong v. Meyers*, 141 Kan. 140, 143, 40 P. 2d 430; *Waltmire v. Ford*, 147 Kan. 732, 740, 78 P. 2d 893; G. S. 1935, 60-2909.)

Defendants urge the trial court erred in failing to give an instruction on the doctrine of last clear chance. The instructions fairly covered the issues joined by the pleadings. No complaint at the time of trial was made on the ground the instructions were inadequate as to any issue urged and no instruction on that question was submitted by defendants. Assuming, without deciding, that such an instruction was applicable, no reversible error is disclosed.

Defendants contend the trial court erred in refusing to render judgment in their favor on the special verdict. That verdict is in harmony with the general verdict and the ruling was proper. That is, the verdicts were in harmony insofar as damages in some amount were concerned.

The real difficulty as to both verdicts is the item of $4,000 contained in finding number 11 (6). That question and that finding were:

"11. If you find for plaintiff, how much do you allow (6) for loss of enjoyment from being unable to play the violin?  A. $4,000."

Defendants insist that item cannot stand for the reason it does not rest upon a substantial basis, and damages therefor cannot be assessed in money. In other words, the contention is damages awarded for "loss of enjoyment" resulting from being unable to play a violin would or might be based upon pure conjecture and speculation. They also contend $4,000 for that item is excessive, even though it should be held "loss of enjoyment" constitutes a proper element of damages. Defendants also urge the instructions in the case did not warrant or contemplate recovery for "loss of enjoyment." That contention concerning the instructions is probably correct. The trial court, however, submitted this particular special question and we shall meet the issue on the theory it is properly before us. We do that for another reason. Plaintiff was asked a question which forms the basis of recovery on that item. Defendants objected to it and the objection was overruled. We are, therefore, obliged to meet the issue on the question of the alleged improper admission of testimony. The question and answer were:

"Q. Now state whether or not, outside of the earning of money, it meant anything to you and, if so, what? A. It was my life work. It is just part of me. Every place I go, if I don't have my violin, why I wonder where it is. I have played it all my life. I play solos—solos by myself, with a piano accompaniment."

Plaintiff was an accomplished violinist. She had studied under artists at home and abroad. She had given individual violin lessons and she had directed orchestras. She had played solos in public. Plaintiff was sixty-three years of age. For a year preceding the accident she had taken a vacation. Her earnings for the year prior to her vacation had been approximately $1,200. The particular injury here involved was the breaking of the proximal end of the fifth metacarpal bone of her left hand. It resulted in a permanent stiffening of the little finger. The finger was deprived of its strength and its lateral motion, with the result she is unable to play the violin. There were minor injuries which are not related to the immediate problem.

In support of defendants' contention item 11 (6) did not constitute a proper element of damages, are cited: *Consolidated Smelting Co. v. Tinchert*, 5 Kan. App. 130; *City of Columbus v. Strassner*, 124 Ind. 482, 25 N. E. 65; *American Strawboard Co. v. Foust*, 12 Ind. App. 421, 39 N. E. 891; *Pittsburg, etc., Ry. Co. v. O'Connor*, 171 Ind. 686, 85 N. E. 969; *South Bend Brick Co. v. Goller*, 46 Ind. App. 531, 93 N. E. 37. We do not consider the first case cited as helpful on the particular issue here involved. In the first Indiana case cited that court held:

"An instruction to the jury that they should consider in measuring the damages any 'lack of personal enjoyment' occasioned by the injury, was erroneous." (Syl.)

In the course of that opinion it was said:

"Instruction numbered twenty-one was erroneous, in that it informed the jury that they should take into consideration in measuring the damages which they would assess, in case they found for the appellee, any 'lack of personal enjoyment' occasioned by the injury. In other respects we are satisfied with the instruction, but in the respect mentioned we are of the opinion that it is erroneous. Counsel for the appellee have cited us to no authority in support of the instruction, and we have found none. The question of damages, like other legal propositions, should rest upon some substantial basis. The following inquiries, therefore, suggest themselves: What is 'personal enjoyment'? How are we to ascertain to what extent it is possessed by a human being? How can its absence and the cause thereof be demonstrated? If a person for any cause has been deprived of 'personal enjoyment' how are we to go about adjusting his loss upon a money basis? These questions seem

to be pertinent, but unanswerable, and suggest an insuperable difficulty to the measurement of damages because of loss of 'personal enjoyment.' We are unable to say to what extent the objectionable part of the said instruction influenced the jury in measuring the damages which were assessed against the appellant, and, therefore, cannot hold that it was not injured by the instruction." (p. 489.)

In the second Indiana case cited a contrary instruction, approved by the decision in the second case, was later specifically overruled in the South Bend Brick Company case. In the latter case the Indiana court reaffirmed its former decision in the case of *City of Columbus v. Strassner,* supra.

In the case of *Locke v. I. & G. N. Ry. Co.,* 25 Tex. Civ. App. 145, 60 S. W. 314, it was held:

"Loss of capacity for the enjoyment of the pleasures of life, though alleged as a basis for damages, is too vague an element to admit of evidence to sustain it." (Syl. ¶ 3.)

That the *cause* of an injury, such as the negligence of a defendant in personal-injury cases, cannot be grounded on mere conjecture or speculation has, of course, been definitely established. See *Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472, and numerous cases there cited. Also, *Stephenson v. W. R. Grimshaw Co.,* 148 Kan. 466, 83 P. 2d 655. The same rule has been applied even in workmen's compensation cases, where the *cause* of disability rests upon surmise, conjecture or speculation. (*Fair v. Golden Rule Refining Co.,* 134 Kan. 623, 7 P. 2d 70; *Whitaker v. Panhandle Eastern P. L. Co.,* 142 Kan. 314, 46 P. 2d 862.)

The same rule has been applied in various damage actions for breach of contract where the alleged *resulting damage* was too remote, speculative and uncertain. (*Railway Co. v. Thomas,* 70 Kan. 409, 78 Pac. 861; *Altman v. Miller,* 128 Kan. 120, 276 Pac. 289; *Labette Petroleum Co. v. Cities Service Gas Co.,* 137 Kan. 75, 19 P. 2d 470.) And in actions to recover damages for personal injury which prevented plaintiff from engaging in speculative ventures. (*Railway Co. v. Posten,* 59 Kan. 449, 53 Pac. 465.) And to an action for damages for loss of future profits in an unestablished business. (*States v. Durkin,* 65 Kan. 101, 68 Pac. 1091.) And to an action for damages by a lessor against a lessee for oil alleged to have been drained from under the land of the lessor where the proof was speculative. (*Corr v. Continental Oil Co.,* 145 Kan. 78, 64 P. 2d 30.) These are only a few of our own cases which might be cited on the general principle that recovery of damages may not be

had where the *cause* of the injury is too remote and speculative and where the alleged *resulting damages* are too conjectural and speculative to form a sound basis of measurement.

The precise question of whether recovery may be had for "loss of enjoyment," such as that claimed in the instant case, is one of first impression in this court. A few preliminary considerations may be helpful. While many states hold that recovery may be had for mental anguish which is not preceded by or accompanied with some physical injury (8 R. C. L. 518, and cases there cited), the general rule in this state is to the contrary. (*City of Salina v. Trosper,* 27 Kan. 544; *A. T. & S. F. Rld. Co. v. McGinnis,* 46 Kan. 109, 26 Pac. 453; *Cole v. Gray,* 70 Kan. 705, 79 Pac. 654; *Lonergan v. Small,* 81 Kan. 48, 105 Pac. 27; *Whitsel v. Watts,* 98 Kan. 508, 159 Pac. 401; *Hendren v. Arkansas City,* 122 Kan. 361, 252 Pac. 218.) In the instant case there was physical injury.

In the Lonergan case, this court held recovery may be had for mental suffering, which is the proximate and natural result of *intentional wrong,* although there was no battery or bodily injury inflicted. This court has also held where mental suffering is induced by mutilation or disfigurement of the person such mental suffering may be considered as a proper element of damages. (*Scott v. Cowan,* 114 Kan. 32, 217 Pac. 698.) In that opinion, after reviewing numerous authorities, this court said:

"The rule was early announced in Kansas that:

"'Where mental suffering is an element of the physical pain, or is a necessary consequence of the physical pain, or is the natural and proximate result of the physical injury, then we suppose that damages for mental suffering may be recovered.' (*City of Salina v. Trosper,* 27 Kan. 544, 564.)

"This rule has been followed in numerous cases decided by this court. (*Railroad Co. v. Chance,* 57 Kan. 40, 45 Pac. 60; *Railway Co. v. Wade,* 73 Kan. 359, 85 Pac. 415; *Baisdrenghien v. Railway Co.,* 91 Kan. 730, 139 Pac. 428; *Ramey v. Telegraph Co.,* 94 Kan. 196, 146 Pac. 421; *Shelton v. Bornt,* 77 Kan. 1, 93 Pac. 341.)" (p. 34.)

In *Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721, it was said:

"And, as we view the matter, the plaintiff's face having been disfigured and his speech having been impaired, to permit him to say that it embarrassed and humiliated him did not introduce an element not a natural result of his injury. On the contrary, it would seem that if one caused an injury to another which affected his appearance he could just as well assume that the disfigurement would humiliate and embarrass him as that the injuries would cause pain and suffering." (p. 714.)

It has also been held that where fright results in a fall and the

fall results in personal injuries, the injured party may recover for both the mental anguish and the bodily injury resulting from the negligent acts. (*Clemm v. Atchison, T. & S. F. Rly. Co.*, 126 Kan. 181, 268 Pac. 103.)

Plaintiff stresses the language employed in *Railroad Co. v. Chance*, 57 Kan. 40, 45 Pac. 60, where it was said:

"Damages for the permanent deprivation of health and of the capacity to work and enjoy life should therefore be limited to the period extending from December 1, 1890, to October 18, 1891. (Busw. Pers. Inj., § 20.)" (p. 48.)

Analysis of that opinion will disclose the precise point presented here was not an issue in that case and cannot be regarded as authority for plaintiff's contention.

It is true that "loss of enjoyment," and "loss of enjoyment of life," under varying circumstances have been held to constitute proper elements of damage. (*Haynes v. Railway,* 101 Me. 335, 64 Atl. 614; *Benson v. Superior Mfg. Co.,* 147 Wis. 20, 132 N. W. 633; *Haucke v. Beckman,* 96 N. J. L. 409, 115 Atl. 653; *Bassett v. Milwaukee N. R. Co.,* 169 Wis. 152, 170 N. W. 944; *Haeussler v. Consolidated Stone & Sand Co.,* 3 N. J. Misc. R. 159, 127 Atl. 602; *Kasiski v. Central Jersey Power & Light Co.,* 4 N. J. Misc. R. 130, 132 Atl. 201; *Galveston Electric Co. v. Biggs,* 14 S. W. [2d] 307; *Nees v. Goldman,* 109 W. Va. 329, 154 S. E. 769; *Reed v. Jamieson Investment Co.,* 168 Wash. 111, 10 P. 2d 977; *Budek v. City of Chicago,* 279 Ill. App. 410; *Kramer v. Chicago, M., St. P. & P. R. Co.,* 226 Wis. 118, 276 N. W. 113.)

Plaintiff cites *District of Columbia v. Woodbury,* 136 U. S. 450, 34 L. Ed. 472, and *McDermott v. Severe,* 202 U. S. 600, 50 L. Ed. 1162. Those cases are not exactly in point on the issue of loss of enjoyment.

We shall not indulge in a detailed analysis of the other cases above cited in an already too lengthy opinion. This court, after careful consideration of the entire subject, has concluded to hold that loss of enjoyment resulting from being unable to play the violin is too speculative and conjectural to form a sound basis for the assessment of damages. It is well to bear in mind the jury allowed separately for pain and suffering resulting from the injury. That item is not in dispute. It will also be well to observe the jury allowed nothing for loss of earnings. Plaintiff contends the last-mentioned finding should be construed to apply only to past earnings and not to future earnings, for the reason the jury also specifically found

there was no loss of earnings for the year preceding the accident. Question number 11 (5) easily could have been framed to make clear such distinction. It might have been separated so as to cover the loss of both past and future earnings. It was not so framed and we cannot well read the interpretation contended for into it.

Plaintiff urges that in question 11 (6) she might just as well have asked how much the jury allowed for permanent injury, and the element of loss of enjoyment from being unable to play the violin would have been included therein. Not properly in view of what we have heretofore said. Moreover, we would still have the question squarely presented on the improper admission of the evidence, which we have previously discussed. Furthermore, question 11 (6) leaves this court no room to say the $4,000 or any part thereof was awarded for permanent injury. That question is clear, and an award for permanent injury cannot be read into it. Then, too, even though the court should be inclined to consider the $4,000 item as having been intended to include permanent damages, the court would have no possible way of determining how much thereof was allowed for permanent injuries. It follows the judgment must be modified by a reduction in the sum of $4,000. Otherwise the judgment will be affirmed. It is so ordered.

WEDELL, J. (dissenting in part, and concurring in part): I dissent from the statement of law contained in the first paragraph of the syllabus and from the corresponding portion of the opinion. In my opinion any injury which deprives a human being of an existing privilege or of a definite existing enjoyment of life, robs the individual of a right, the loss of which is compensable.

It should be noted on the outset the enjoyment in the instant case was not an imaginary enjoyment. It was a fixed and definite enjoyment which existed at the time of the injury. Nor did it constitute an incidental or merely occasional enjoyment. It was an enjoyment which grew out of and was a part of the regular and ordinary pursuits of the plaintiff's life. It was truly exactly as she stated: "It was my life work. It was just part of me." It constituted the loss of the greatest enjoyment of her life. To say that the loss of such an enjoyment and the comfort to a human being resulting from such enjoyment is compensable in no amount does not appeal to my sense of justice. Neither am I willing to say that merely by reason of the fact juries and courts are unable to accurately

measure such a loss, we will give the injured party nothing to compensate for the loss. Nor is that the law as I understand it to be. (17 C. J. 756.) In my opinion such a loss occasioned by actual physical injury is compensable, whether the loss be designated physical or mental. To say to an artist who has made her living as a musician and has spent her entire life in the field and atmosphere of music, that she has lost nothing of compensable value by being deprived of the greatest enjoyment left to her in life, is tantamount to saying one of two things or both. It either means the law does not regard that enjoyment *as an element* of value to her life or that such value is so indefinite and uncertain that it simply cannot be measured even inaccurately by the scales of justice. After careful and deliberate consideration I am compelled to confess that I cannot bring myself to concur in either of those views. Personally I regard such an enjoyment as one of very distinct value in the life of the plaintiff. In its loss the plaintiff had something very real taken out of her life. The fact this court has been unable to measure accurately personal damage or loss has not deterred it from compensating therefor in some amount which to it seemed reasonable. That we have repeatedly recognized the fact that "physical pain," or "mental suffering," or "mental anguish," or "fright," cannot be accurately measured in money, requires no re-citation of authorities. Cases of our own court, cited in the majority opinion, clearly disclose we have not permitted that fact to deny to the injured person some damage as approximate compensation for the injury or loss sustained. The same has been true in this state, as indicated in the majority opinion, where a person suffered *embarrassment* and *humiliation* as a result of disfigurement. We clearly recognized there that different individuals might be affected variously by such disfigurement. To one the humiliation and embarrassment resulting from the disfigurement might be almost unbearable and to another it might be of small consequence. Notwithstanding such variations in the effect on human beings and the consequent difficulties in measuring the damage in the respective cases, we did not permit those facts to prevent recovery on the theory the element of damage or loss was too vague and indefinite to be susceptible of proof. We there cited cases holding that *mental suffering* which is induced by the relations of mind and body is as difficult to measure as mental suffering induced by *mortification* and *disfigurement*. It should be borne in mind the damages there allowed were expressly allowed for

*feeling* and *humiliation,* elements which of course rested exclusively in the mind of the individual. Thus the elements of *feeling* and *humiliation* were there expressly recognized as proper elements of damage.

Numerous illustrations of loss of enjoyment of life might be detailed to make clear the vital importance of the question before us. The reader will readily supply the examples. It has never been my desire or inclination to recognize verdicts based on purely imaginary injuries or losses. I do not, however, consider the instant loss as imaginary. Where verdicts are based in part upon imaginary losses, they should be reduced as the circumstances and justice may require. That may be done with sufficient accuracy for practical purposes. I am not willing, however, to exclude altogether what I regard as a proper element of damages, merely by reason of some of the difficulties involved in the measurement of damages where the damage is due to actual injury or loss of life. As stated, we have not excluded elements of damage in other personal-injury cases on the ground the scales of justice were not sufficiently perfect to measure the particular damage with exact accuracy. Perfection or infallibility in this regard has never been required by the profession. Such precision is not even required from appellate courts when dealing with the question of excessive verdicts. In such cases we apply the conscience rule. We reduce the verdict if sufficiently excessive to shock the conscience of the court, and we reduce it to the extent where it will not shock our conscience to permit it to stand. We do not, however, set the entire verdict aside because it is exceedingly difficult of correct measurement. None of us believe that, after having carefully searched a thing so indefinite and vague as our conscience, we have accurately measured the damage. That method, we think, is at least the best method yet devised, and it constitutes a workable plan of measurement. That is all practical men require.

In the majority opinion is contained a quotation from the Indiana case, *City of Columbus v. Strassner,* 124 Ind. 482, 25 N. E. 65. That quotation contains a series of questions which that court held were impossible of answer on the question of measure of damages for "loss of enjoyment." The reader is invited to again observe them. The same identical questions may be applied to our own cases dealing with the measurement of damages for "humiliation and embarrassment," "mental pain," "mental suffering" or "fright." Yet this court has definitely held they constituted proper elements of damage and

were not too speculative and conjectural to form a substantial basis for the assessment of damages.

Cases from two states are cited in support of the majority opinion. The writer of that opinion made diligent search for additional authorities to support that view, but was unable to find them. In view of the contrary decisions from other jurisdictions it will be well to first note briefly the cases cited in support of the majority opinion on the particular question of "loss of enjoyment." In the Indiana case the quotation in the majority opinion contains the statement, "Counsel for the appellee have cited us to no authority in support of the instruction, and we have found none." That case was decided in 1890. Since that time courts have had occasion to pass upon the question and have decided it contrary to the holding in the Indiana case, as we shall presently show. The only case cited from any other jurisdiction, in the majority opinion, is a Texas case, *Locke v. I. & G. N. Ry. Co.*, 25 Tex. Civ. App. 145, 60 S. W. 314. In that case no authorities are cited in support of the rule stated and the case in no wise discusses the merits of the question presented. It will, however, be interesting to note that in the more recent Texas case of *Galveston Electric Co. v. Biggs*, Court of Civil Appeals of Texas, 14 S. W. (2d) 307, (1929), that court in considering the question of an excessive verdict considered as proper elements of damage the resulting inability of the injured party to dance and play tennis, things which she previously had been accustomed to doing.

The great majority of courts, and in my opinion on sounder reasoning, have generally allowed recovery for "loss of enjoyment," or "loss of enjoyment of life." Obviously, if recovery may be had for injury which results generally in the loss of the enjoyment of life, then recovery cannot be withheld where compensation is sought for only one of such enjoyments as in the instant case. In other words, the plaintiff in the instant case has herself, by a special question, restricted the extent of recovery for "loss of enjoyment."

The courts, where the question has been raised, to wit: Wisconsin, New Jersey, West Virginia, Washington and Illinois, have expressly determined the issue here involved. Decisions from some of those states also cite authorities dealing with similar questions. This opinion will, however, be restricted to cases from the states which have definitely determined the issue before us. In *Benson v. Superior Mfg. Co.*, 147 Wis. 20, 132 N. W. 633, it was held:

"In an action for a permanent personal injury, an instruction permitting the jury to award damages to compensate plaintiff for the resulting *'deprivation of the pleasures of life'* was not erroneous, but the use of that phrase is not to be commended." (Syl. ¶ 7.) (Italics inserted.)

In the course of the opinion it was stated:

"It is urged that so much of the instruction as permitted the jury to award damages because of the *'deprivation of the pleasures of life'* is erroneous. Juries are frequently and correctly charged that a plaintiff in a personal-injury action may be awarded damages because of *'diminished capacity for enjoying life.'* There is no substantial difference between the two phrases. The one here used is more likely to be misunderstood than the other, and for that reason its use is not commended. The charge was not erroneous." (p. 30.)

In *Bassett v. Milwaukee N. Ry. Co.,* 169 Wis. 152, 170 N. W. 944, it was held:

"Plaintiff in a personal-injury action may be awarded damages because of *diminished capacity for enjoying life* or because of *'deprivations of the pleasures of life;'* and it was not error in such a case to instruct the jury to consider the extent, if any, to which the injury had affected a young man's *'ability to engage in pastimes.'* " (Syl. ¶ 5.) (Italics inserted.)

In the course of the opinion it was said:

"Appellant also complains because the court instructed the jury that in awarding plaintiff damages they were to take into consideration 'the extent, if any, to which it [the injury] had affected his ability to engage in pastimes.' It is conceded by appellant that plaintiff in a personal-injury action may be awarded damages because of 'diminished capacity for enjoying life,' or, as approved in *Benson v. Superior Mfg. Co.,* 147 Wis. 20, 132 N. W. 633, because of 'deprivations of the pleasures of life.' Having conceded that damages because of 'diminished capacity for enjoying life' is proper, we do not appreciate the force of the contention that in awarding damages the jury may not take into consideration 'the extent, if any, to which it [the injury] had affected his ability to engage in pastimes.' 'Diminished capacity for enjoying life' is more comprehensive than 'ability to engage in pastimes.' Plainly the former includes the latter and more. The defendant was not injured by the use of the language employed." (p. 159.)

In the still more recent Wisconsin case, decided November 9, 1937, *Kramer v. Chicago, M., St. P. & P. R. Co.,* 226 Wis. 118, 276 N. W. 113, that court had before it the question of an excessive verdict and in that connection clearly considered "loss of capacity to enjoy life," as a proper element of damages.

In the case of *Haeussler v. Consolidated Stone & Sand Co.,* 3 N. J. Misc. R. 159, 127 Atl. 602 (1925), the New Jersey court said:

"A shriveled hand and wrist is a mortification, especially to a young woman such as Mrs. Haeussler was. She is entitled to compensation for the mortifica-

tion. Such an injury also deprives *one of much of the enjoyment of life. For this deprivation a person is entitled to damages.*" (p. 163.) (Italics inserted.)

In 1926 the New Jersey court had presented to it the question of recovery for impairment of the ability to enjoy boyhood games and pastimes. In the case of *Kasiski v. Central Jersey Power & Light Co.*, 4 N. J. Misc. R. 130, 132 Atl. 201, that court said:

"Apart from the pain and anguish that the lad suffered from the painful injuries and from the limited use of his hand, the jury could properly take into consideration in estimating his damages the *impairment of his ability to enter into and enjoy those boyhood games and pastimes to the full extent as his playmates;*" . . . (p. 132.) (Italics inserted.)

The New Jersey court also had before it the question of whether a stenographer who had fingers injured could recover, among other things, for the injury which affected her ability to play a violin. The court in that case, *Haucke v. Beckman*, 96 N. J. L. 409, 115 Atl. 653, said:

"Next, it is argued the award of $5,000 as compensatory damages is excessive.

"We think the verdict is excessive. The testimony tends to show partial permanent injury to two fingers of the plaintiff's right hand. She suffered painful bruises upon her hand and body. She was earning $30 per week at the time of her injury, and was by reason thereof unable to resume her vocation for a period of ten weeks. *She has musical talent and plays on the violin. There was testimony to the effect that the condition of her injured fingers is such that it will interfere to some extent with her playing that musical instrument.*

"As has been said, she was out of employment, as a result of her injuries, for ten weeks, but she went back to her *former employment of stenographer* and is receiving the same wages, $30 per week, as theretofore.

"We have concluded that if the plaintiff will agree to accept in addition to the $1,000 allowed her for punitive damages, the sum of $3,000 for compensatory damages, the verdict may stand for $4,000, otherwise the rule to show cause will be made absolute." (p. 411.) (Italics inserted.)

The West Virginia court in *Ness v. Goldman*, 109 W. Va. 329, 154 S. E. 769 (1930), held that "impairment of capacity to enjoy life" constituted a proper element of recovery. In the course of that opinion it was aptly said:

"It would be very difficult, if not quite impossible, to lay down a yardstick, or measure, by which to compensate for pain and suffering, or the impairment of health. Damages are awarded to compensate for injury suffered, and where the loss is of a money nature and admits of definite estimate a 'yardstick' for its measurement can be easily, and should be, given. But

where the damages do not admit of definite or approximate estimate, there is no legal measure of damages, and the law leaves the amount entirely to the sound discretion of the jury, and the verdict in such case will not be disturbed unless the amount is so large or small as to evince passion, prejudice or some ulterior motive on the part of the jury. (*Gibbard v. Evans,* 87 W. Va. 650; 4 Ency. Digest Va. and W. Va. Repts. 183.) Who shall measure physical pain, mental anguish, or *impairment of capacity to enjoy life?* Perhaps it would be better to say that the criticism of the instructions is that they do not tell the jury the elements of the damages to be assessed." (p. 339.) (Italics inserted.)

In the state of Washington, in *Reed v. Jamieson Investment Co.,* 168 Wash. 111, 10 P. 2d 977 (1932), it was held:

"Upon an issue as to the damages for personal injuries resulting in incurable traumatic neurosis and permanent disability, it is proper to instruct the jury to consider *how far the injuries disable the plaintiff from enjoying the natural and ordinary uses of a healthy mind and body,* as existing at the time of the injury." (Syl. 1.) (Italics inserted.)

In that case various authorities were reviewed, including decisions from Arizona and from the supreme court of the United States on similar questions, and it was specifically held that injuries which disable a person from enjoying the natural and ordinary uses of a healthy mind and body, existing at the time of the injury, are compensable.

In the state of Illinois the question of being compensated by virtue of being deprived of privileges and enjoyments common to people in the same class with plaintiff was presented, and it was there held in *Budek v. City of Chicago,* 279 Ill. App. 410 (1934), that such loss was compensable. In the course of the opinion it was said:

"Considering the nature of plaintiff's injuries, the permanency of her crippled and practically helpless condition, the pain she suffered and is destined to suffer, her loss of earning power, her inability to bear children naturally, the fact that she will be deprived of the *privileges and enjoyments common to people of her class,* and her hospital, doctors', nurses' bill aggregating about $10,000, we do not think the amount awarded is excessive." (p. 429.) (Italics inserted.) See, also, *Galveston Electric Co. v. Biggs,* supra.

Frankly, I am of the opinion that the distinctions themselves which this court is endeavoring to make, in the instant case, as to proper elements of personal damage are becoming too vague, hazy and speculative to form a substantial basis upon which to maintain or erect logical, sound and definite principles or guides.

I concur in the law as stated in syllabus number two, and the cor-

responding portion of the opinion. My reason for concurring in the reduction of the judgment in the sum of $4,000 is not based upon the ground that question 11 (6) did not constitute a proper element of damages, but upon the ground that, in my opinion, no issues were properly joined on the question here presented; and the law of the case as contained in the instructions, not objected to by the plaintiff, did not contemplate or authorize a verdict on the item contained in special finding number 11 (6). It seems to me that where recovery is sought on so important an item as the one involved in the instant case the pleadings should be so framed as to more clearly disclose the issues, and those issues should be clearly covered by the instructions in order to enable appellate courts to pass upon the errors alleged.

SMITH, J., joins in this dissent.