[No. 23635. Department One. May 2, 1932.]

JAMES S. REED, *Respondent*, v. JAMIESON INVESTMENT COMPANY, *Appellant*.[1]

[1]Reported in 10 P. (2d) 977.

112

*Randall & Danskin,* for appellant.

*Richard S. Munter* and *Justin C. Maloney,* for respondent.

PARKER, J.—The plaintiff, Dr. Reed, commenced this action in the superior court for Spokane county seeking recovery of damages for personal injuries suffered, as he claims, as the result of the negligent operation of a passenger elevator by a servant of the defendant investment company, in an office building owned and maintained by it in the city of Spokane. Trial in the superior court for that county, sitting with a jury, resulted in verdict and judgment awarding to Dr. Reed recovery in the sum of ten thousand dollars, from which the investment company has appealed to this court.

On October 11, 1930, Dr. Reed was maintaining, as he had for many years prior thereto, his dental office on the third floor of the Jamieson building, in the city of Spokane, as a tenant of the investment company, the owner of the building. About 8:30 o'clock that morning, Dr. Reed left his office, accompanied by his office girl, he intending to go to his breakfast and she intending to go on some other errand. They entered the elevator on the third floor. The operator then lowered the elevator to the street lobby floor, stopping its floor even with the lobby floor, and opened the door for them to go out into the lobby.

The girl stepped out first, while the elevator was stationary, Dr. Reed immediately following her. While he was in the act of stepping out, having one foot out, his body partly out, and his other foot inside, still on the floor of the elevator, the operator suddenly dropped the elevator about two feet. Dr. Reed fell forward, striking his knee on the edge of the lobby floor, very seriously injuring its cap and otherwise

receiving severe injuries. Aside from the injury to his knee, his other injuries were largely in the impairing of his nervous system, resulting from the shock received at the time of the accident.

The girl helped him to his feet. His actual physical injuries for the moment did not seem to be very serious, so the girl then left him and went on her way. He did, however, then receive such a shock that from the time when the girl left him until he returned to his office some twenty minutes later, he did not know where he was during that period. He was then treated by Dr. Rohrer, a physician occupying a portion of the same suite of offices with him. Dr. Rohrer continued to treat him from time to time thereafter.

Dr. Reed was thereafter unable to continue his dental work, except in a very limited degree, being compelled to frequently remain away from his office and very frequently, while at his office, being compelled to lie down and rest. About April 1, 1931, his condition became such that he was compelled to entirely give up his dental work, and was wholly unable to engage therein up to the time of the trial, which occurred on June 3, 1931.

At the time of receiving his injuries, Dr. Reed was sixty years old. He was then and always had been a man of unusually vigorous physical health, and was endowed with a very fine and stable nervous system. Dr. Rohrer testified touching Dr. Reed's injuries and the result thereof, in part, as follows:

"Q. Doctor, will you state your full diagnosis of what is the trouble with Dr. Reed? A. Injury to the right knee, on the capsule, and traumatic neurosis. Some injury to the shoulder joint, and I think the pain which he complains of in the back is due to traumatic neurosis. It may be an injury there, too, that he has some injury to the lumbar muscles, but I am rather inclined to think it is due to traumatic neurosis. Q. From

your observation of him and your knowledge of his case in your opinion is this condition which you describe as traumatic neurosis permanent or not? A. I think it is incurable for a man of his age. I don't think he will ever come back. Q. Doctor, I believe you expressed yourself that at first you thought it would clear up? A. Yes, sir, in the beginning I did. Q. When did you become convinced that this traumatic neurosis had not cleared up and would not? A. Around January and February. Q. From your knowledge of him and your observation in your opinion will he ever be able to practice his profession of dentistry again? A. No, sir.''

This view entertained by Dr. Rohrer of Dr. Reed's afflictions resulting from the accident of October 11, 1930, has substantial support in other medical testimony given at the trial.

This, we think, is a fair summary of the principal, controlling facts touching the merits, as the jurors were warranted in viewing them.

It is contended in behalf of the investment company that the trial court erred to its prejudice in giving to the jury the following portions of its instruction No. 4:

''In determining the amount of damages, if any, you are at liberty to consider (1) whether the injuries complained of in the complaint are in their nature permanent or temporary, *and how far they are calculated to disable the plaintiff, if at all, from enjoying the natural and ordinary uses of a healthy mind and body,* if shown to exist at the time of said alleged injuries, by a preponderance of the evidence; (2) also such damages as will fairly and reasonably compensate plaintiff for alleged reasonable *expenses incurred, if any, or to be incurred, if any, for nurse and hospital care and medicines, if any,* as they are shown to exist by a preponderance of the evidence, but in no event to exceed the sum alleged in the complaint; also *for such alleged expenses, if any, incurred, or to be in-*

*curred for doctors' professional care in such an amount as is shown by a preponderance of evidence,* but in no event to exceed the sum alleged in the complaint.''

For convenience of reference, we have numbered the two subdivisions of this quoted language, and have also italicized the portions of which appellant particularly complains.

It is argued that the words of the first numbered subdivision of the instruction ''how far they are calculated to disable the plaintiff, if at all, from enjoying the natural and ordinary uses of a healthy mind and body,'' are too broad in their meaning, and have the effect of leaving the jury room for speculation outside of their proper field of inquiry.

In *Rice v. City of Council Bluffs,* 124 Iowa 639, 100 N. W. 506, there was drawn in question an instruction reading, in part, as follows:

''If, under the evidence and the rules before given, you find the plaintiff is entitled to recover, she should be allowed such sum, not exceeding the amount claimed, as will compensate her for the pain and inconvenience of body and anguish of mind which she has suffered on account of the injury, if any, sustained by her. . . .''

Holding this instruction to have been properly given, Justice Weaver, speaking for the court, said:

''The pain and suffering for which the law allows compensation is not confined to mere physical aches. It includes as well the mental anguish, the sense of loss and burden, the inconvenience and embarrassment which the person who is materially crippled or disabled in body or limb can never escape.''

In *Boehm v. Duluth, S. S. & A. Ry. Co.,* 91 Wis. 592, 65 N. W. 506, an instruction in which the words ''personal inconvenience'' were similarly used and similarly applicable, was held not erroneous. In *Benson v. Su-*

*perior Mfg. Co.,* 147 Wis. 20, 132 N. W. 633, an instruction, similarly applicable in that case, wherein there were used the words "deprivation of the pleasures of life," was held not erroneous. In *Arizona Eastern R. Co. v. Bryan,* 18 Ariz. 106, 157 Pac. 376, there was involved a similar instruction, applicable to that case, wherein were used the words "personal inconvenience." This was held not erroneous. In *Washington & Georgetown Railroad Co. v. Harmon,* 147 U. S. 571, there was before the court an instruction given by the trial court, similarly applicable to that case, containing the words "personal inconvenience." This was apparently approved by the supreme court as not being error, though it may be said that the instruction was not in that respect seriously challenged on appeal. See, also, 8 R. C. L. 469, 470, and 17 C. J. 869, 870.

We are of the opinion that this portion of the instruction did not constitute error prejudicial to the investment company.

■ It is argued that the second above numbered subdivision of the instruction, relating to expenses incurred or to be incurred "for nurse and hospital care and medicines" and "for doctors' professional care," constitutes error prejudicial to the investment company; this because there was no evidence of Dr. Reed having incurred any amount of expense for any of such items prior to the date of the trial. The argument is directed particularly against the reference to expenses other than to expenses "to be incurred," there being evidence only as to the latter. The whole of Dr. Reed's allegation of special damages is found in his complaint in these words:

"That plaintiff has incurred and will be compelled to incur for the reasonable and necessary expenses for hospital, medical and surgical treatment of the injuries

caused to plaintiff, as aforesaid, the sum of five hundred dollars.''

While the evidence shows medical and surgical treatment rendered to Dr. Reed between the date of the occurring of the accident and the date of the trial, there is no evidence of any expense being incurred by him therefor. But the evidence does show, without contradiction, that, in order to remedy the very serious injury to his knee, he will have to undergo a surgical operation thereon, which, by reason of its serious nature, will burden him with an expense for hospital, nursing, surgical and medical services in an amount of between six and seven hundred dollars.

Our decisions in *Eggleston v. Seattle,* 33 Wash. 671, 74 Pac. 806; *Niemyer v. Washington Water Power Co.,* 45 Wash. 170, 88 Pac. 103; *Reeks v. Seattle Elec. Co.,* 54 Wash. 609, 104 Pac. 126; *Anderson v. Hurley-Mason Co.,* 67 Wash. 342, 121 Pac. 815, Ann. Cas. 1913D 148, and *Lieske v. Natsuhara,* 165 Wash. 270, 5 P. (2d) 307, clearly sustain the view that, under the circumstances of this case, this portion of the instruction did not constitute error to the prejudice of the investment company.

We do not overlook our decisions in *Olson v. Erickson,* 53 Wash. 458, 102 Pac. 400; *Rastelli v. Henry,* 73 Wash. 227, 131 Pac. 643; *Bennett v. Oregon-Wash. R. & Nav. Co.,* 83 Wash. 64, 145 Pac. 62; *Gosa v. Hyde,* 117 Wash. 672, 202 Pac. 274; *Estes v. Babcock,* 119 Wash. 270, 205 Pac. 12; *Ely v. North Coast Lines,* 151 Wash. 137, 275 Pac. 78, and *Burge v. Anderson,* 164 Wash. 509, 3 P. (2d) 131, which may seem to lend support to the argument that this portion of the instruction, of which particular complaint is made, constituted error prejudicial to the investment company. But we think that each of those cases, when critically

noticed in view of the particular facts involved therein, is distinguishable from our present case.

Here we have an instruction referring to expenses, "if any," occurring between the date of the accident and the date of the trial, and also expenses to be incurred in the future, with no evidence supporting the former but with clear and undisputed evidence supporting the latter, in an amount clearly in excess of the entire special claim of damage of five hundred dollars for all of such alleged expenses. While, as a matter of technical right, the investment company was entitled to have the instruction confined exclusively to the alleged special damages, measured by expense to be incurred in the future, it seems plain to us that the jury did not award to Dr. Reed any recovery for any other special damage expenses. Therefore, we conclude that this portion of the instruction was not prejudicial to the rights of the investment company.

█ It is finally contended that the award of the verdict and judgment is excessive. It seems to us that what we have already said as to the nature and extent of his injuries and resulting afflictions is a sufficient answer to this contention. We conclude that we would not be warranted in disturbing the verdict and judgment because of the excessiveness of the award.

We conclude that the judgment must be affirmed. It is so ordered.

MAIN, MITCHELL, and BEELER, JJ., concur.

TOLMAN, C. J. (dissenting)—Respondent sued, among other items of damages, for loss of earning capacity resulting from his injuries. Upon the trial, matters occurred which caused him voluntarily to strike all such allegations from his complaint and to withdraw from the jury all claims for loss of earning capacity, both past and future.

Certainly, to the ordinary man, the pursuit of a gainful occupation is the chief of all uses of a healthy mind and body. That being so, the instruction set out in the majority opinion was in my judgment clearly erroneous, as it permitted the jury to allow damages for the loss of earning capacity notwithstanding respondent had abandoned that item.

Not only that, but the injuries (except very minor ones) were established only by opinion evidence based entirely upon subjective symptoms. Traumatic neurosis, based solely upon subjective symptoms, is far too intangible and uncertain, both as to extent and duration, to justify a ten thousand dollar recovery.

I therefore dissent.

### ON REHEARING.

[*En Banc.* October 13, 1932.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein, and the judgment is therefore affirmed.