PER CURIAM.
A three car collision resulted in the death of Margaret McCampbell Lassing. Her administrator, John M. Lassing, Jr., brought a negligence suit seeking damages under the wrongful death statute, Chapter 768, F.S.A., and the survival statute, F.S.A. § 45.11. Judgment in the sum of $25,000.00 was entered from which defendant, one of the vehicle operators, appeals.
The liability and damage issues were tried separately by jury.
The appellant assigns as error as to the liability trial the fact that the court refused to give defendant’s requested •charge on the doctrine of sudden emergency. If there is any competent substantial evidence to support a requested charge a party has a right to have the court charge the jury on the law applicable to his theory •of the case as disclosed by that evidence. Harwell v. Blake, Fla.App.1965, 180 So.2d 173. After viewing the evidence in the light of that principle we find that the only evidence of any actionable negligence by the defendant was that it occurred before the sudden emergency. The sudden emergency •doctrine was not applicable because it applies only to actionable negligence occurring after the emergency. Ellwood v. Peters, Fla.App.1966, 182 So.2d 281. The court properly refused the requested instruction and we are thus satisfied that the liability phase was conducted without error.
The following comments are addressed to the proceedings wherein damages were assessed. At the time of her death Mrs. Las-sing was an unemployed widow in good health and active in church and charitable affairs. Being sixty-three years of age she had a table life expectancy of 14.14 years. She was an astute business woman, frugal and modest in habit. Her gross monthly income from rentals and interest was about $359.00, while her living expenses and incidental costs of property maintenance totalled about $230 per month. Her estate was estimated to have a value of $115,000.00. Her rental properties were located in an area of growth and she held them because of the potential growth in value. Her basic assets were two farms, a duplex apartment and a savings account.
Mrs. Lassing expired on the way to the hospital and there was no evidence of any conscious pain and suffering on her part. The ambulance bill was about $25.00 and no contention is made but that plaintiff is entitled only to nominal damages under the survival statute.
Thus, defendant’s challenge to the damages necessarily is directed to the remaining theory, that of wrongful death. He suggests that the award was grossly excessive and that error was committed by receiving into evidence the amount of decedent’s investment income and capital. We believe that the points are interwoven. Our analysis is that the damages are excessive because not clearly supported, if the investment income and capital are not proper items for jury consideration. If the items are appropriate then the award is satisfactorily supported by the evidence.
The court instructed the jury as to the proper elements and the nature and measure of damages in such cases as follows:
Per plaintiff’s request:
“The Plaintiff Administrator in this case is entitled to recover the value at the time of decedent’s death of the prospective earnings and savings that from the evidence could reasonably have been expected to accrue to the estate of the deceased, but for the death of the decedent.
“There is no exact and uniform rule to be applied for measuring the value of the life of a deceased person to her own estate. In making such a determination you may consider, among other proper elements, the age of the deceased, probable duration of her life, her habits of industry, means, business, earnings, *246 health and skill, and her reasonable future expectations.”
Per defendant’s request:
“You are instructed that the Administrator of the decedent’s estate is entitled to recover such damages as the estate may have sustained by reason of the death of the decedent.
“The proper measure of such damages is the present worth of the decedent’s life to an estimated prospective estate that the decedent probably would have earned and saved during decedent’s life expectancy, to be left at death.
“A determination of the proper amount of such damage requires a consideration of the age to which the decedent would probably have lived, as well as an estimate of the value of the estate decedent probably would have earned and saved during such period of time and would probably have left at the end of the life expectancy.
“When such amount has been determined it should be reduced to a present money value and that amount awarded to the plaintiff as damages.”
This reflects a correct statement of the law. Jacksonville Electric Co. v. Bowden, 1907, 54 Fla. 461, 45 So. 755, 15 L.R.A..N.S., 451; Florida East Coast Ry. Co. v. Hayes, 1914, 67 Fla. 101, 64 So. 504, 7 A.L.R. 1310; Marianna & B. R. Co. v. May, 1922, 83 Fla. 524, 91 So. 553; International Shoe Co. v. Hewitt, 1936, 123 Fla. 587, 167 So. 7. See also English v. United States, 1953, 5th Cir., 204 F.2d 808.
In other words the essential question facing the jury was, “How much, from the evidence, would Mrs. Lassing have accumulated in her estate via her skill and efforts, using the enumerated criteria, in the period from the date of her accidental death to the date of her expected normal death, reducing the result to its present money value ?”
In our judgment the amount of her investment income and the size and nature of her estate are, indeed, relevant and material to the issue. Specifically, they bear upon the decedent’s habits of industry, means, business, earnings, skill and her reasonable future expectancy, all as found in the court’s charge. More fundamentally, they give the jury valuable factors whereby the equation may be solved as to the prospective accumulation that could reasonably have been expected to accrue to the estate except for the death of the decedent.
We find no decisions in Florida specifically dealing with the question of the admissibility of evidence of earnings of a deceased from investments, management of rental property and management of capital for the purpose of determining recoverable damages in a wrongful death action. The statute, Section 768.02, merely directs that the jury give such damages as. the party entitled to sue may have sustained by reason of the death of the deceased. The elements which enter into the value of a life to the estate of a deceased person are broadly stated in Jacksonville Electric Co. v. Bowden, supra, and in Marianna & B. R. Co. v. May, supra. The only decision which mentions the question of consideration of the value or the amount of real property which might have been accumulated or income of property or investment or management of capital is Louisville and N. R. Co., v. Jones, 1903, 45 Fla. 407, 34 So. 246. The-issue there was the court’s denial of a request for a charge on the subject. The court determined the question by noting-that there was no evidence in that case that, the deceased had ever accumulated any real' property or had any income from investments or any prospect of having any property or capital to invest and the denial of' the requested charge was affirmed on the-sole basis of lack of evidence to support the-requested charge. The author in 9 Fla.Jur.,, Death by Wrongful Act, Sec. 39, makes a misleading statement pertaining to the elements that may be properly considered ini determining the value of the loss to the: *247 prospective estate of the deceased. He makes the statement that it is' improper to consider the foregoing mentioned elements but thereafter concludes, “where there is no evidence of any likelihood of such accumulations”. It would have been more accurate had the author omitted any reference to improper consideration of these elements and merely noted, if anything, the well known principle that it is improper to consider any elements where there is no evidence pertaining to that element. In Benboe et al. v. Booth, Fla.1952, 61 So.2d 654, the court held that it was improper to receive in evidence the will of the deceased employer who had made the deceased a residuary legatee hut the court did not denounce this evidence upon the theory that evidence of investment income is inadmissible.
 Dealing with the question solely on the basis of admissibility of evidence it becomes apparent that there can be no separation of income into the categories of “earned income” or “unearned income” or “investment income” as is done in some other fields of the law for the reason that more often than not any evidence of earnings is a combination of all. On the issue of damages the jury was properly instructed that the amount should be fixed by determining the amount that the decedent, if she had lived, would probably have accumulated from her probable future earnings and saved during her life expectancy and thereby left at death. The measuring of the damages necessarily involves consideration of all of the facts which directly pertain to the decedent’s earnings in the past, her age, health, business capacity, education, habits, experience, energy, morals, social adaptability, skill and environment and her present and future prospects of business success at the time of her death and her thrift and probable duration of life. None of these factors require exclusion of evidence of •earnings of the deceased from investments, management of rental property and management of capital. The court did not err dn admitting such evidence.
Defendant appears to contend further that the decedent was not gainfully employed and thus could not be deemed to have any earnings. Earnings may be forthcoming even though not realized by the sweat of the brow and even though not de-nomjpated as salary consequent to being in someone’s employ. Some people labor for others, some are self-employed, others realize their living by investments and trading of assets, and in all such cases income or earnings may be accumulated in an estate within the proper bounds for consideration as allowable damages in wrongful death actions. The definition of earnings in such cases is not strict. The more critical factor is the savings which are accumulated. The management of rental properties for profit may very well entail the use of skill and the expenditure of effort to the same extent as might be involved in a classic instance of employment by another for wages in a master-servant relationship.
Using investment income and capital, are the damages excessive? A jury is afforded reasonable latitude and discretion in making the assessment. As was stated to the jury there is no exact and uniform rule to be applied for measuring the value of the life of a deceased person to her own estate. Using the material placed in evidence the methods whereby it could have reached the sum that it did defy cataloging. It was not bound, as defendant contends, merely to subtract her expenses from income, multiply the difference by life expectancy found in the tables and reduce the result to its present money value. The jury could have surmised that, because of her good health, she.would have a longer expectancy. It could have found that, by reason of her astuteness, her future expectations would surpass her past performance. It might have concluded in the light of the evidence that she would liquidate her estate and re-invest to a greater advantage. If the jury were limited as defendant argues then the jury would have no function and the court could simply direct a certain verdict.
*248 In conclusion we agree with the trial court and are not able to say that the damages returned are grossly excessive or without allowable limits of the law.
Affirmed.
SMITH, C. J., and ANDREWS and WALDEN, JJ., concur.