[No. 4357–II.   Division Two.   April 13, 1981.]

STANLEY WOOLDRIDGE, *as Administrator, Appellant,* v.
SCOTT ALLEN WOOLETT, ET AL, *Respondents.*

*David V. Johnson,* for appellant.

*Ken Williams* and *Richard L. Gemson,* for respondents.

PETRIE, J.—Cliff Wooldridge was killed instantly while riding as a passenger in a vehicle which crashed into an embankment on January 15, 1977. As administrator of Cliff's estate, Stanley Wooldridge, decedent's father, filed this survival action under RCW 4.20.046 alleging that the driver of the car and the owners of the car negligently caused his son's death. Scott Woolett, the driver, and Cynthia Sofie, the owner, both minors, admitted liability. By order on summary judgment Cynthia's parents had previously been dismissed as parties defendant. The jury awarded the estate the exact amount of special damages proved, but failed to award any general damages, despite the opinion of the only economist who testified at trial that if Cliff had lived a normal life–span the present value of his expected life estate would be $66,450. The trial court denied the administrator's motion for new trial. He appealed to the Supreme Court and the cause was thereafter transferred to this court for resolution of the issues on appeal.

We consider first the administrator's general contention that because of the gross inadequacy of the jury award, the trial court erred by denying his motion for new trial. Obviously, the jury found that Cliff's estate would have no value had he survived the accident and lived a normal span of life. The record reveals that Cliff Wooldridge was killed 3

weeks before his 22nd birthday. He was affable and single, and he possessed average intelligence and respectable athletic skill. He completed a high school education and attended community college a portion of 1 year. After graduation from high school in 1974 his work record was sporadic and limited.

■■ This court will not disturb an award of damages made by a jury if the amount is not so disproportionate as to indicate it resulted from passion or prejudice. *Lundgren v. Whitney's, Inc.*, 94 Wn.2d 91, 614 P.2d 1272 (1980). If the damages are within the range of evidence they will not be found to have been motivated by passion or prejudice solely on the amount awarded. *Cooperstein v. Van Natter*, 26 Wn. App. 91, 611 P.2d 1332 (1980). The granting of a new trial on grounds of inadequate damages is peculiarly within the discretion of the trial court, and we will not disturb a denial of such motion absent manifest abuse of discretion. *Cowan v. Jensen*, 79 Wn.2d 844, 490 P.2d 436 (1971). The jury's complete denial of any general damages is perhaps unusual, but it is indicative of the jury's determination that if Cliff Wooldridge had lived his savings at the end of his life would have been zero. This was a prerogative of the jury based upon all the evidence; they could have concluded his earnings would have been less than the average assumed by the economist, or that his personal expenses would have been greater than the average assumed by the economist. Consequently, we do not disturb the trial judge's denial of the motion for new trial.

■ In reaching this conclusion we note that the purpose of damages in a survival action is to reimburse the decedent's estate for such monetary losses it sustains as a result of decedent's untimely death. *Criscuola v. Andrews*, 82 Wn.2d 68, 507 P.2d 149 (1973) (dictum). It is not an action for damages by members of decedent's family for their loss due to decedent's death. *See* Martin, *Measuring Damages in Survival Actions for Tortious Death*, 47 Wash. L. Rev. 609, 610–13 (1972).

Over plaintiff's objection, the trial court allowed the

county coroner to testify that a document sent him by the state toxicologist indicated that at the time Cliff Wooldridge died the amount of alcohol in his blood was .17 percent by weight. The administrator argues that the toxicology test results were erroneously admitted because (1) no evidentiary foundation was established, (2) the information was privileged, and (3) the test results were hearsay.

The coroner testified that he did not perform the tests himself but that they were performed pursuant to statutory authority by the state toxicologist, RCW 46.52-.065. This statute authorizes the state toxicologist to perform blood alcohol content tests on "all *drivers* and all *pedestrians* who are killed in any traffic accident where the death occurred within four hours after the accident." (Italics ours.) Because Cliff Wooldridge was a passenger in the Sofie vehicle, the statute's authorization permitting admission of such analyses into evidence "in any civil or criminal action where relevant" does not squarely apply. Accordingly, the test results were not admissible under RCW 46.52.065. Nevertheless, they were admissible under RCW 68.08.106, which allows the coroner to make or cause to be made blood analysis under certain circumstances. The record reveals that the blood sample was not taken merely as a report or record of autopsy or postmortem, but as part of a criminal investigation. Accordingly, it was not privileged pursuant to RCW 68.08.105. *Zenith Transp., Ltd. v. Bellingham Nat'l Bank*, 64 Wn.2d 967, 395 P.2d 498 (1964). Furthermore, the record, though scant on the subject, indicates prima facie that the test results were accurate, and therefore admissible by the coroner.[1] *Hoffman v. Tracy*, 67 Wn.2d 31, 406 P.2d 323 (1965); *Superior Asphalt & Concrete Co. v. Department of Labor & Indus.*, 19 Wn. App. 800, 578 P.2d 59 (1978).

Next, the administrator contends the trial court

---

[1] Plaintiff's hearsay objection is raised for the first time on appeal. We consider any error waived. RAP 2.5(a).

unduly restricted the economist's testimony. The trial court limited the economist's projection of the estate's net worth to future net earnings of the decedent less his personal expenses discounted to present value. The administrator asserts that the trial court erred in prohibiting the expert from testifying to the estate's probable net worth based on income, which would include not only earnings but transfer payments, such as rentals, pensions and welfare. The court's limitation of the testimony comported with the general rule of damages in survival actions. *Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972); *Balmer v. Dilley,* 81 Wn.2d 367, 502 P.2d 456 (1972); *Criscuola v. Andrews, supra* (dictum). Consideration of possible transfer payments would be inappropriate in this case. Due to the decedent's youth, consideration of such factors would be too conjectural. *See Hinzman v. Palmanteer, supra.*[2] We find no abuse of discretion in the trial court's limitation of the economist's testimony.

Over the administrator's objection, the court allowed the defense to illustrate, by cross–examination of plaintiff's expert witness, that the decedent's future net earnings should be reduced by the amount of social security taxes payable on decedent's expected earnings. Furthermore, defense counsel was permitted to argue to the jury that they should reduce the expert's projection by 6 percent, roughly the percentage of earnings presently payable for social security purposes. We need not tarry on this issue because it is obvious that the jury did not consider social security deductions in reaching the damages award. We reserve for some future date any determination of whether net earnings may properly include social security taxes payable. Any error, if it was error, was certainly not preju-

---

[2]We do not rule that income other than earnings is never appropriate in determining damages in a survival action. In the two cases cited by plaintiff, *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E.2d 241 (1960), and *Smith v. Lassing,* 189 So. 2d 244 (Fla. Dist. Ct. App. 1966), other income was appropriate because of the decedents' advanced ages and the fact that the income–producing properties were already held or vested.

dicial and would not provide grounds for reversal. *See Wappenstein v. Schrepel,* 19 Wn.2d 371, 142 P.2d 897 (1943).

Of major concern to the administrator is the trial court's limitation of general damages for shortened life expectancy measured only in terms of loss of decedent's future earning capacity. At trial, plaintiff took exception to the court's damage instruction to the jury, contending it did not include general damages for "shortened life expectancy"[3] as a *separate claim.*

The estate administrator brought this action under RCW 4.20.046, the survival statute, which provides in relevant part:

> (1) *All* causes of action by a person or persons against another person or persons *shall* survive to the personal representatives of the former . . . *Provided, however,* That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased.

(First and second italics ours.)

We acknowledge that the purpose of the statute is to allow *all* claims, *except* those specifically excluded by the

---

[3]The court's instruction to the jury stated:

"It is the duty of the court to instruct you as to the measure of damages.

"You must determine the amount of money as in your opinion will fairly and justly compensate the decedent's estate of the loss of his life.

"Your verdict should include the following items:

"(1) Funeral and burial expenses in the amount of $2,339.51.

"(2) The decedent's shortened life expectancy resulting in the loss of his future earning capacity to his estate."

Plaintiff submitted and the trial court rejected the following jury instruction:

"It is the duty of the court to instruct you as to the measure of damages.

"You must determine the amount of money as in your opinion will fairly and justly compensate the decedent's estate for his wrongful death. In this regard, you may take into consideration and award compensation for the shortened life expectancy caused by his death, as well as the loss of the value of his future earning capacity caused by his wrongful death. You should also take into consideration the decedent's burial and funeral expenses in determining the amount of money as in your opinion will fairly and justly compensate the decedent's estate for his wrongful death."

statute to survive to the tort claimant's estate. *Harvey v. Cleman,* 65 Wn.2d 853, 400 P.2d 87 (1965).

The estate administrator cites *Warner v. McCaughan,* 77 Wn.2d 178, 460 P.2d 272 (1969), and *Hinzman v. Palmanteer, supra,* for authority that shortened life expectancy, *i.e.,* "loss of life's pleasures" is a compensable loss in survival actions. We note in *Warner* at pages 182–83 a comment that the court disagreed with a position urged by the tort–feasor in that case—that damages for "permanent injuries, shortened life expectancy, and impaired earning capacity," all "thought to be personal to a decedent" were impliedly excluded as recoverable damages in a survival action because of the proviso in RCW 4.20.046. But the real holding in *Warner* is that disabilities and permanent loss of earning power sustained by a tort victim caused by a tort–feasor are recoverable by the victim's estate after her death. The court did not discuss the concept of "shortened life expectancy."

Additionally, we note in *Hinzman* that the court approved a jury instruction substantially similar to the instruction requested by the administrator in the case at bench. Again, the court did not discuss the nature of "shortened life expectancy," but held that the estate of a 7–year–old child was not precluded, despite the speculative nature of damages to such a young life, from seeking "general damages consisting of loss of value of her future earning capacity as affected by her shortened life expectancy caused by her death." *Hinzman,* at 331.

We have not been directed to, nor have we found, any opinions in this jurisdiction which explore the precise meaning of "shortened life expectancy" as an item of damages recoverable by the estate of a deceased tort victim. Nor did the administrator seek a specific definition of the term "shortened life expectancy". Nevertheless, it is generally equated with loss of decedent's earnings *and* a psychological loss resulting from the decedent's inability to enjoy life's pleasures. *See* Fleming, *The Lost Years: A Problem in the Computation and Distribution of Damages,* 50 Cal. L.

Rev. 598 (1962). The plaintiff in a personal injury action may argue that due to the tort–feasor's negligence he or she is deprived of the ordinary pleasures and amenities of life, such as the ability to pursue personal avocations, to marry, to have children, and in general to live a full life. *Downie v. United States Lines Co.,* 359 F.2d 344 (3d Cir. 1966); *Frankel v. United States,* 321 F. Supp. 1331 (E.D. Pa. 1970); *Willinger v. Mercy Catholic Medical Center,* 482 Pa. 441, 393 A.2d 1188 (1978); *Paladino v. Campos,* 145 N.J. Super. 555, 368 A.2d 429 (1976). Shortened life expectancy may include a claim for plaintiff's "anguish at the prospect of hastened death". Fleming, at 598.

▪ Insofar as damages for shortened life expectancy implies damages for loss of life's pleasures and amenities, we conclude that they are but a component of pain, suffering, anxiety, and distress. *See Ma v. Russell,* 71 Wn.2d 657, 430 P.2d 518 (1967); *Sherman v. Seattle,* 57 Wn.2d 233, 356 P.2d 316 (1960). We are impressed by the observations of the court in *Corcoran v. McNeal,* 400 Pa. 14, 23, 161 A.2d 367, 372–73 (1960):

> The inability to enjoy what one has heretofore keenly appreciated is a pain which can be equated with the infliction of a positive hurt. The conscious loss of a benefit to which one is entitled hurts as much as a festering wound.

We hold that a claim for Cliff Wooldridge's shortened life expectancy, insofar as it attempts a recovery for his alleged psychological loss, as opposed to a claim for loss of earnings due to his untimely death, is excluded by RCW 4.20.046 in survival actions. Loss of life's pleasures is "'the immeasurable perturbations of the spirit'", personal to the decedent, which have "no real monetary dimensions among the living, . . . [and] less among the dead." Richards, *Survival of Actions,* 36 Wash. L. Rev. 331, 332 (1961), citing Jaffe, *Damages for Personal Injury: The Impact of Insurance,* 18 L. & Contemp. Prob. 219, 222–25 (1953).

The administrator also contends that he was denied a fair trial because the trial court refused his request for a

curative instruction after one of the defense counsel told the jury in closing argument,

> [T]hese defendants have been held responsible for the damages and they're going to have to pay whatever damages you come up with.

As a matter of fact both defendants had the protection of liability insurance to cover at least portions of any verdict the jury might have reached for general damages. The remark is strikingly similar to the comment criticized in *Miller v. Staton*, 64 Wn.2d 837, 394 P.2d 799 (1964). We cannot categorize counsel's remark as inadvertent, but it appears to have slipped by relatively unnoticed until the administrator's counsel's attention was drawn to it sometime after the jury had commenced deliberations. At that time plaintiff's counsel informally requested the trial court, in chambers and without a record having been made of the request, to give the jury a "curative" instruction. We have not been advised of the precise nature of the administrator's request, but it seems to us that any instruction short of telling the jury that both defendants did in fact have liability insurance available to pay general damages up to the amount of the policies' limits would have been more damaging than curative.

After "an extremely careful evaluation of the total approach or presentation to the jury," as we are required to do by *Miller,* at page 840, we cannot say, even if the "error" has been properly preserved, that the "total effect upon the jury and the opportunity of the plaintiff for a fair trial, render it necessary to reverse this case and order a new trial." *Miller v. Staton, supra* at 841.

Finally, the administrator contends the defendant Cynthia Sofie's parents were improperly dismissed by the order on summary judgment. We cannot tell from the face of the record, or otherwise, whether we have precisely the same documents before us as were before the court when it granted the parents' motion for summary judgment. Nevertheless, nothing in the record, briefs, or remarks of counsel lead us to disagree with the court's memorandum opinion

on summary judgment, *i.e.,* that no question of material fact exists to warrant application of the family car doctrine under the standards set forth in *Hulse v. Driver,* 11 Wn. App. 509, 524 P.2d 255 (1974), and cases cited therein.

Judgment affirmed.

PEARSON, A.C.J., and PETRICH, J., concur.

Reconsideration denied May 13, 1981.

Review granted by Supreme Court July 27, 1981.