[No. 47840–6. En Banc. December 31, 1981.]

STANLEY WOOLDRIDGE, *as Administrator, Petitioner,* v.
SCOTT ALLEN WOOLETT, ET AL, *Respondents.*

*Niichel, Rutz & Johnson, John R. Rutz,* and *David V. Johnson,* for petitioner.

*Bassett, Gemson & Morrison,* by *R. L. Gemson* and *Johnson & Williams,* by *Kenneth D. Williams,* for respondents.

*Daniel F. Sullivan, Robert H. Whaley,* and *Donovan Flora* on behalf of Washington State Trial Lawyers Association, amici curiae for petitioner.

*Michael Mines* and *Ingrid W. Hansen* on behalf of Washington Insurance Council, amici curiae for respondents.

WILLIAMS, J.—This case presents the question whether the value of a person's shortened life expectancy is a separately recoverable item of damages in a survival action brought pursuant to RCW 4.20.046. The trial court refused to instruct the jury that the reasonable value of Clifford S. Wooldridge's shortened life expectancy was a separate element of damages in this survival action. The Court of Appeals, Division Two, affirmed the trial court in all respects. *Wooldridge v. Woolett,* 28 Wn. App. 869, 626 P.2d 1007 (1981). We likewise affirm.

The facts are as follows:

Clifford S. Wooldridge, Scott Allen Woolett, and Cynthia Ann Sofie attended a party on January 15, 1977, at the home of John Judd in Port Angeles. At approximately 11:30 p.m., Wooldridge wished to leave and accepted a ride from Woolett and Sofie. Woolett was driving his girlfriend Sofie's car, a 1969 Camaro. The vehicle was registered in the name of her father, Louis E. Sofie, who had cosigned for the purchase of the car and carried it on his own insurance policy. As Woolett accelerated, the car hit a curb at the end of the street and overturned, and Wooldridge was killed instantly. At the time of his death he was almost 22

years of age, died intestate, and left no dependents.

Appellant Stanley Wooldridge, administrator for his son's estate, brought a survival action naming as defendants Scott Allen Woolett, Cynthia Ann Sofie, her parents Louis E. and Beverly Sofie, and John Judd. The action against Judd was subsequently dismissed on appellant's motion. Woolett answered, admitted liability, and tendered insurance policy limits of $25,000. The Sofies answered, denying any negligence and asserting contributory negligence on the part of Wooldridge. Prior to trial, Louis E. and Beverly Sofie moved for summary judgment on the issue of their liability under the family car doctrine. The motion was granted, and an order on summary judgment was entered. Appellant also moved for summary judgment on the issue of liability of Scott Allen Woolett and Cynthia Ann Sofie prior to trial. The motion was granted. The jury trial, therefore, was concerned only with the issue of damages to be assessed against respondents Woolett and Sofie.

At trial, appellant presented evidence about Wooldridge, including his job history, which appellant's counsel characterized as admittedly "spotty". Appellant called Professor John Eshelman, Dean of the School of Business at Seattle University, who testified that the probable present net value of Wooldridge's future net earnings, had he lived to his normal life expectancy, would be approximately $67,250. The respondents cross-examined Dr. Eshelman intensely, but presented no other evidence about Wooldridge's earning capacity except the testimony of a restaurant owner for whom he worked as a dishwasher after graduating from high school. The restaurant owner testified that Wooldridge "just didn't come back to work" one day, and failed to give notice.

Appellant excepted to the trial court's refusal to give its proposed instructions Nos. 6B and 6C. Proposed instruction No. 6B reads as follows:

Your verdict should include the following items:
(1) Funeral and burial expenses in the amount of $2,339.51;

(2) The reasonable value of the decedent's lost earning capacity; and

(3) The reasonable value of the decedent's shortened life expectancy.

Report of Proceedings, at 202. Proposed instruction No. 6C said that the jury could award compensation for shortened life expectancy as well as for the loss of value of future earning capacity. The trial court actually instructed the jury as follows:

Your verdict should include the following items:

(1) Funeral and burial expenses in the amount of $2,339.51;

(2) The decedent's shortened life expectancy resulting in the loss of his future earning capacity to his estate.

Report of Proceedings, at 214.

The jury returned a verdict in the amount of $2,339.51, representing only the funeral and burial expenses. The trial court denied appellant's motion for a new trial based on the inadequacy of the award and allegedly prejudicial statements made by defense counsel in closing argument. This appeal followed.

I

DAMAGES FOR SHORTENED LIFE EXPECTANCY AS A
SEPARATE ITEM OF RECOVERY

This action is based on the following language of Washington's survival statute:

(1) All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section: *Provided, however, That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased.*

(Some italics ours.) RCW 4.20.046. This statute does not create a separate claim for the survivors, but merely pre-

serves the causes of action that a person could have maintained had he not died, other than for pain and suffering, anxiety, emotional distress, or humiliation.

In *Harvey v. Cleman,* 65 Wn.2d 853, 857–58, 400 P.2d 87 (1965), RCW 4.20.046 was interpreted by this court to preserve all causes of action of the decedent except those specifically enumerated in the proviso to that statute. We again had occasion to interpret the survival statute in *Warner v. McCaughan,* 77 Wn.2d 178, 182–83, 460 P.2d 272 (1969), and came to a similar conclusion:

> It is urged that the proviso of RCW 4.20.046, *supra,* excludes all items of damage thought to be personal to a decedent, *i.e.,* permanent injuries, *shortened life expectancy, and impaired earning capacity,* not just those items expressly excluded by the proviso—pain and suffering, anxiety, emotional distress, or humiliation. We do not agree.

(Last italics ours.) From the above quotation, which implies shortened life expectancy is somehow distinguishable from impaired earning capacity, appellant predicates the right to recover damages for shortened life expectancy as a separate item of damages.

In *Hinzman v. Palmanteer,* 81 Wn.2d 327, 330, 501 P.2d 1228 (1972), we cited *Warner* for the proposition that

> Shortened life expectancy caused by the child's death *and* the resulting loss of value of her future earning capacity to her estate are specifically recognized as *items* of recovery not excluded by the statute.

(Citation omitted. Italics ours.) Appellant further submits that his proposed instruction No. 6B, which would have permitted the jury to award separate damages for shortened life expectancy and lost earning capacity, was based upon an instruction approved by this court in *Hinzman,* at pages 329–30, where the jury was instructed that it

> shall allow such sum as general damages as in your opinion will fairly and justly compensate her [decedent's] estate for her wrongful death. In this regard *you may take into consideration and award compensation for the shortened life expectancy caused by her death, as well*

*as the loss of the value of her future earning capacity caused by her wrongful death.'"*

(Italics ours.) The above language gives the impression that shortened life expectancy and loss of future earning capacity are separate and distinct elements of damage in a survival action. On the next page of the opinion, however, a very different meaning is imparted by the following language:

> In this suit, the estate of Lauretta Hinzman claimed damages under the survival statute for general damages consisting of loss of value of her future earning capacity *as affected by* her shortened life expectancy caused by her death.

(Italics ours.) *Hinzman,* at 331.

Appellant fails to define the term "shortened life expectancy" anywhere in his brief, but we note that the Washington State Trial Lawyers Association amicus brief would generally equate that term with the impairment of an ability to enjoy the pleasures of life which a person otherwise would have enjoyed. Brief of amicus Washington State Trial Lawyers Association, at 10–16. To demonstrate the shortened life expectancy element of damages, appellant cites *Reed v. Jamieson Inv. Co.,* 168 Wash. 111, 10 P.2d 977 (1932) and *Parris v. Johnson,* 3 Wn. App. 853, 479 P.2d 91 (1970) for the proposition that a *qualitative* loss of life's pleasures is a separate element of damages apart from pain and suffering. Appellant then extends the argument to conclude that such a recognition of qualitative loss of life's pleasures should give rise to a separate element of damages for a *quantitative* loss of those same pleasures. We disagree.

The cases cited by appellant are distinguishable for at least two reasons. First, *Reed* and *Parris* are personal injury cases where the plaintiffs sought recovery for their permanent injuries which prevented them from continuing to enjoy certain activities for the remainder of their lives. Second, appellant ignores the following language of the *Parris* opinion:

Although disability exists as a distinct element of damages, it is frequently a natural concomitant of pain and suffering. The relationship between disability and pain and suffering may be direct or indirect, but the two are so frequently interwoven that a clear distinction cannot be made in many instances.

*Parris,* at 860. It seems fairly certain the *Parris* court considered the lost enjoyment of life's pleasures as merely a component of damages for pain and suffering—items of damage specifically excluded by the proviso to RCW 4.20-.046. Likewise, the Court of Appeals in this case found that insofar as damages for shortened life expectancy imply damages for the loss of life's pleasures and amenities, such damages are "but a component of pain, suffering, anxiety, and distress." (Citation omitted.) *Wooldridge v. Woolett,* 28 Wn. App. 869, 876, 626 P.2d 1007 (1981).

The case of *Willinger v. Mercy Catholic Medical Center,* 482 Pa. 441, 393 A.2d 1188 (1978), addresses issues similar to those confronting us in this case. *Willinger* involved a wrongful death and survival action where plaintiff sought separate damages for the shortened life expectancy of a minor child. Despite the fact that Pennsylvania's survival statute is even broader than RCW 4.20.046 in permitting recovery, the court rejected the separate claim for loss of life's amenities and pleasures.[1] In so holding, the court reasoned:

> We discern little or no distinction between seeking to calculate the value of "life itself" and the value of experiencing life's pleasures. Were we to permit compensation for loss of "life itself", undoubtedly this intangible item would have to be measured in terms of the loss of those very opportunities to enjoy family, work, and recreation the trial court directed the jury to consider in measuring the loss of life's pleasures. . . .
> Even where the victim survives a compensable injury,

---

[1] 20 Pa. Cons. Stat. Ann. § 3373 (Purdon) reads as follows:

"An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive."

this Court has never held that loss of life's pleasures could be compensated other than as a component of pain and suffering. . . . *[T]o a large extent it has been the plaintiff's consciousness of his or her inability to enjoy life that we have compensated under the rubric of "loss of life's pleasures". Unlike one who is permanently injured, one who dies as a result of injuries is not condemned to watch life's amenities pass by. Unless we are to equate loss of life's pleasures with loss of life itself, we must view it as something that is compensable only for a living plaintiff who has suffered from that loss.*

(Italics ours.) *Willinger*, at 447.

We find *Willinger* to be persuasive authority in settling the issues before us. The loss of life's amenities should be recoverable only by plaintiffs who survive compensable injuries, since such lost pleasures are personal to that individual and essentially represent pain and suffering. Damages for loss of life's amenities should not be recoverable in a survival action, however, because such damages are a back-door method of obtaining compensation for pain and suffering, or for obtaining those damages otherwise recoverable in a wrongful death action. *See* RCW 4.20.010, .020, and RCW 4.24.010. The proper method for determining damages in a survival action as opposed to a wrongful death action, was set out in *Criscuola v. Andrews,* 82 Wn.2d 68, 507 P.2d 149 (1973). In that case, we stated that the potential for double recovery (not a problem here) can be avoided "if recovery under the survival action is limited to the prospective net accumulations of the deceased." *Criscuola,* at 70. We believe that the loss of the ability to enjoy life's pleasures and amenities is *not* an asset to be accumulated by the deceased.

The concept of "shortened life expectancy" was never at issue in the *Cleman, Warner,* and *Hinzman* line of cases. Those cases concerned only the recovery of damages for disabilities and loss of value of a decedent's future earning capacity. To the extent that dicta in those cases and our approval of the jury instruction in *Hinzman* intimate that shortened life expectancy is a separately recoverable ele-

ment of damages in a survival action, we now specifically disapprove of that dicta. Instead, we hold that shortened life expectancy is relevant in a survival action only to the extent it affects the loss of value of a decedent's future earning capacity.

## II
### LIMITATION OF EXPERT TESTIMONY

The trial court limited the basis of Professor Eshelman's opinion to Wooldridge's anticipated earned income, thus excluding certain income items which formerly had been included in his calculations. In so doing, the court relied on *Balmer v. Dilley,* 81 Wn.2d 367, 371, 502 P.2d 456 (1972), where we cited *Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972), in stating that the measure of damages for a decedent's lost earning capacity is the probable net worth of the decedent's future net earnings had he lived to his normal life expectancy. This figure is computed by determining the total of future earnings, less the personal expenses he would have incurred during his lifetime, and reducing the net amount to its present cash value.

 Appellant contends that the court erred by preventing his expert, Professor Eshelman, from including the value of unearned income and transfer payments (social security, welfare payments, interest income, etc.) in his calculations. He cites *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E.2d 241, 81 A.L.R.2d 939 (1960) and *Smith v. Lassing,* 189 So. 2d 244 (Fla. Dist. Ct. App. 1966) as authority for the inclusion of all income, earned or unearned, in measuring a decedent's net worth. These cases, however, seem to be clearly distinguishable. In each of those cases, the decedent already possessed passive investments which yielded investment income. In the present case, no evidence seems to have been offered to show Wooldridge's savings habits. In explaining why evidence of investments should be considered, the *Lassing* court noted, at page 246:

In our judgment the amount of her investment income and the size and nature of her estate are, indeed, relevant

and material to the issue. Specifically, they bear upon the decedent's habits of industry, means, business, earnings, skill and her reasonable future expectancy, all as found in the court's charge. More fundamentally, they give the jury valuable factors whereby the equation may be solved as to the prospective accumulation that could reasonably have been expected to accrue to the estate except for the death of the decedent.

In this case, consideration of potential income from investments would be highly speculative where no proof was made of Wooldridge's past savings habits, if any. This is not to say that such unearned income should never be considered in computing damages but where, as here, nothing justifies the economist's forecasts of future investments, we find the trial court acted properly.

## III
### INADEQUATE DAMAGES

When a verdict is so low as to unmistakenly indicate passion or prejudice, a new trial should be ordered. *Kellerher v. Porter,* 29 Wn.2d 650, 666, 189 P.2d 223 (1948). The court will not disturb an award of damages made by a jury if the amount is not so disproportionate as to indicate it resulted from passion or prejudice. *Lundgren v. Whitney's, Inc.,* 94 Wn.2d 91, 96, 614 P.2d 1272 (1980). If the damages are within the range of evidence they will not be found to have been motivated by passion or prejudice. *James v. Robeck,* 79 Wn.2d 864, 870–71, 490 P.2d 878 (1971); *Cooperstein v. Van Natter,* 26 Wn. App. 91, 98, 611 P.2d 1332 (1980); *Johnson v. Marshall Field & Co.,* 1 Wn. App. 655, 661, 463 P.2d 645 (1969). The granting of a new trial on grounds of inadequate damages is peculiarly within the discretion of the trial court, and a denial of such motion will not be disturbed absent a manifest abuse of discretion. *Cowan v. Jensen,* 79 Wn.2d 844, 847, 490 P.2d 436 (1971).

As unfortunate as it may seem, the jury's failure to award any general damages for Wooldridge's death seems to have resulted simply from a failure of proof. As noted in the statement of facts above, Wooldridge's work record was

"spotty" and he had no record of savings. His educational background included a high school diploma and a few credit hours of community college course work. From those factors, it does not appear unreasonable that the jury awarded no general damages. The trial court judge indicated this view when he asked, "[C]an't the jury come to the conclusion that he would have spent every dime he earned, just like I do?" Report of Proceedings, at 243. The Court of Appeals summarized this issue as follows:

> The jury's complete denial of any general damages is perhaps unusual, but it is indicative of the jury's determination that if Cliff Wooldridge had lived his savings at the end of his life would have been zero. This was a prerogative of the jury based upon all the evidence; they could have concluded his earnings would have been less than the average assumed by the economist, or that his personal expenses would have been greater than the average assumed by the economist. Consequently, we do not disturb the trial judge's denial of the motion for new trial.

*Wooldridge v. Woolett*, 28 Wn. App. 869, 871, 626 P.2d 1007 (1981). We find this reasoning sound and the decision sustainable.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, DORE, and DIMMICK, JJ., concur.