[No. 49304-3-I.   Division One.   December 16, 2002.]

YAEKO OTANI, *Respondent*, v. DAVID R. BROUDY, *Appellant*.

*Mary H. Spillane* and *Daniel W. Ferm* (of *Williams, Kastner & Gibbs, P.L.L.C.*) and *John C. Graffe, Jr.* and *Jane E. Clark* (of *Johnson, Graffe, Keay & Moniz*), for appellant.

*Reed P. Schifferman* (of *Lane Powell Spears Lubersky, L.L.P.*); *Dwayne A. Richards* (of *Richards & Kinerk*); and *Paul L. Stritmatter, Garth L. Jones,* and *Ray W. Kahler* (of *Stritmatter Kessler Whelan Withey Coluccio*), for respondent.

BECKER, C.J. — The issue in this appeal is whether loss of enjoyment of life is recoverable by a decedent's estate in a survival action as an item of damage compensating for the decedent's shortened life expectancy. We conclude it is not and reverse an award of $450,000 to the estate of a decedent who died shortly after surgery without conscious pain or awareness that she had been fatally injured. Had the decedent lived, she would have had no claim for loss of

life; therefore, no such claim survived to her personal representative.

The facts are uncontested. While performing surgery upon Yaeko Otani to implant a pacemaker, appellant Dr. David Broudy punctured his patient's aorta, causing uncontrollable bleeding. Ms. Otani was unconscious when injured and died several hours later without regaining consciousness.

At the time of her death, Ms. Otani was 81 years old. She enjoyed an active life. She gardened, traveled, and cooked. She had close relationships with her two children, was active in her church, and had a wide circle of friends. If the implantation of the pacemaker had been successful, Ms. Otani would have had a normal life expectancy of an additional 7.9 years.

The personal representative of Ms. Otani's estate sued Dr. Broudy under Washington's wrongful death and survival statutes. Following a bench trial, the court found that Dr. Broudy negligently caused Ms. Otani's death. In the wrongful death action, the trial court awarded damages of $125,000 each to Ms. Otani's two children as statutory beneficiaries. In the survival action, the court awarded the estate $450,000 for "[l]oss of enjoyment of life which includes shortened life expectancy," as well as $3,854 for burial expenses and $42,762.73 for medical bills.

The only issue raised in this appeal is whether the award of $450,000 for loss of enjoyment of life was authorized under Washington's survival statutes.

■■ A trial court's conclusions of law are reviewed de novo. *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001). Interpretation of a statute is also a question of law and is reviewed de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

■ The wrongful death statutes, RCW 4.20.010 and RCW 4.20.020, create a cause of action that is not available in the common law for the losses of specific beneficiaries

caused by the wrongful death. *Gray v. Goodson*, 61 Wn.2d 319, 325, 378 P.2d 413 (1963). In contrast, Washington's survival statutes, RCW 4.20.046 and 4.20.060, do not create a new cause of action; they preserve the causes of action that the decedent could have maintained if still alive. *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 358, 693 P.2d 687 (1985).

■■ The legislature enacted the survival statutes "to remedy an anomalous twist in the common law which allowed victims of tortious injury to sue if they survived, but barred their claims if they died." *Cavazos v. Franklin*, 73 Wn. App. 116, 118, 867 P.2d 674 (1994). The general survival statute, RCW 4.20.046, preserves all causes of action that the decedent could have brought even for injuries unrelated to the death.[1] The special survival statute, RCW 4.20.060, is limited to claims for personal injury resulting in death.[2] The special survival statute, also known as the death-by-personal-injury statute, has always allowed a decedent's estate to recover for all the decedent's damages, including pain and suffering. *Walton v. Absher Constr. Co.*, 101 Wn.2d 238, 245, 676 P.2d 1002 (1984). Before 1993, the proviso in the general survival statute

---

[1] "All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter . . . : PROVIDED, HOWEVER, That the personal representative shall only be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased on behalf of those beneficiaries enumerated in RCW 4.20.020, and such damages are recoverable regardless of whether or not the death was occasioned by the injury that is the basis for the action. . . ." RCW 4.20.046(1).

[2] "No action for a personal injury to any person occasioning death shall abate, nor shall such right of action determine, by reason of such death, if such person has a surviving spouse or child living, including stepchildren, or leaving no surviving spouse or such children, if there is dependent upon the deceased for support and resident within the United States at the time of decedent's death, parents, sisters or brothers; but such action may be prosecuted, or commenced and prosecuted, by the executor or administrator of the deceased, in favor of such surviving spouse, or in favor of the surviving spouse and such children, or if no surviving spouse, in favor of such child or children, or if no surviving spouse or such child or children, then in favor of the decedent's parents, sisters or brothers who may be dependent upon such person for support, and resident in the United States at the time of decedent's death." RCW 4.20.060.

expressly disallowed recovery of damages such as pain and suffering.

> All causes of action by a person . . . shall survive to [his or her] personal representatives . . . : PROVIDED, HOWEVER, That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased.

Former RCW 4.20.046(1) (1992).

In 1993, the legislature amended the proviso in the general survival statute to "close the gap" between the two statutes. *Tait v. Wahl*, 97 Wn. App. 765, 773 n.3, 987 P.2d 127 (1999) *review denied*, 140 Wn.2d 1015 (2000). Now, even if a decedent's pain and suffering were caused by an injury unrelated to the decedent's death, under the general survival statute that pain and suffering is an item of damages recoverable on behalf of statutory beneficiaries.[3]

■ A Supreme Court case decided under the former version of the general survival statute held that recoverable damages in a survival action do not include loss of enjoyment of life. *Wooldridge v. Woolett*, 96 Wn.2d 659, 666, 638 P.2d 566 (1981) (affirming judgment for funeral and burial expenses only, where decedent was a 22-year-old high school graduate with a "spotty" job history and no spouse or dependents; trial court refused to give instruction that would have allowed recovery for the qualitative loss of life's pleasures in addition to loss of future earning capacity). "The loss of life's amenities should be recoverable only by plaintiffs who survive compensable injuries, since such lost pleasures are personal to that individual and essentially represent pain and suffering." *Wooldridge*, 96 Wn.2d at 666.

The holding in *Wooldridge* did not, however, mean that loss of enjoyment of life is the same thing as pain and suffering. A plaintiff may recover for loss of enjoyment of life as a distinct item of damages in a personal injury action

---

[3] A type of case where this would make a difference is one where an elderly person suffers pain on account of an injury but dies for unrelated reasons before obtaining compensation.

that is not a survival action. *Kirk v. Wash. State Univ.*, 109 Wn.2d 448, 746 P.2d 285 (1987) (personal injury action for injuries incurred during cheerleading practice; jury properly instructed to consider loss of enjoyment of life as distinct from damages for pain and suffering and disability and disfigurement).

> *Wooldridge* does not support a conclusion that an instruction regarding enjoyment of life would be barred in a personal injury action not governed by the survival statute. In fact, the *Wooldridge* court did not criticize the argument made by the appellant in that case . . . that a qualitative loss of life's pleasures is a separate element of damages apart from pain and suffering. The *Wooldridge* court merely distinguished those cases as involving personal injury actions instead of survival actions.

*Kirk*, 109 Wn.2d at 461. Under *Kirk*, it is clear that separate instructions for each item are not necessarily duplicative:

> Recovery for pain and suffering only compensates for physical and mental discomfort caused by the injury. Recovery for disability compensates for inability to lead a "normal life" but does not imply any recovery for loss of a specific unusual activity such as ballet dancing. . . . Recovery for lost wages or lost earning capacity compensates for economic value, but does not include the noneconomic rewards to the dancer.
>
> The trial court in the present case may have felt the need to alert the jury of its prerogative to include consideration of Kirk's loss of enjoyment of life based upon her inability to pursue her interests and abilities in ballet.

*Kirk*, 109 Wn.2d at 461 (citations omitted).

The trial court in this case relied on *Kirk*'s distinction between loss of enjoyment of life and pain and suffering, and concluded that Ms. Otani's estate should recover for Ms. Otani's loss of the enjoyment of the remaining years of her life:

> THE COURT: With regard to Ms. Otani's claim for loss of enjoyment of life, I'm allowing the claim, and this is my brief analysis:

Under the statute, the survival statute, including the 1993 amendments, all of the causes of action survive the death of the party.

And the 1993 proviso does not limit that recovery to pain and suffering, humiliation, etc.

Consequently, the cause of action that Mrs. Otani would have had, had she not died but merely been severely injured would have been loss of enjoyment of life.

Under *Kirk*, the loss of enjoyment of life is the loss of life's pleasures, the inability to enjoy the qualitative aspects of interests, avocations, vocations.

The loss of enjoyment of life is conceptually different than pain and suffering for a number of reasons, but, most significantly here, pain and suffering itself ends with the death. The pain is over.

But the loss of enjoyment of life begins with the death.

I am concluding that loss of enjoyment of life does not require a conscious perception of the loss, because if that were so someone who had no ability to perceive the senses would not be able to recover for loss of enjoyment of life, and yet, as counsel points out, and I think accurately, even someone who is in a vegetative state can recover for loss of enjoyment of life.

If we do not allow for recovery for this element of damage, it would perpetuate the anomaly that it is still cheaper for a defendant to wound the plaintiff than to kill the plaintiff. And there's no possibility of duplicative recovery if loss of enjoyment of life is authorized in this action because there's no other element of the damages that would cover that type of loss.

So I believe that under the statute a fair reading of the statute combined with Kirk, which has recognized loss of enjoyment of life as a separate element of damages, that together those would authorize Ms. Otani's recovery in this case.[4]

■ The trial court's conclusion conflicts with the *Wooldridge* court's holding that damages for loss of enjoyment of life are recoverable only by plaintiffs who survive compensable injuries. *Wooldridge*, 96 Wn.2d at 666. The

---

[4] 2 Verbatim Report of Proceedings (July 26, 2001) at 27-28.

estate argues that *Wooldridge* has been effectively over-ruled by *Kirk* and the 1993 amendment to RCW 4.20.046. But there is no indication in *Kirk* that the outcome in *Wooldridge* was wrong or that a jury should be instructed on loss of enjoyment of life in future cases with facts similar to those in *Wooldridge*. *Kirk* did not overrule *Wooldridge*; rather, it recognized that *Wooldridge* was concerned with a survival action, not a personal injury action. The 1993 amendment did not eliminate the significance of this distinction. While both survival statutes now allow a decedent's estate to recover for the decedent's pain and suffering, there must be evidence that the decedent experienced pain and suffering even if only for a short time.[5] Loss of enjoyment of life must likewise be experienced in life before it can become the basis for an award of damages. For this reason, it is available in a personal injury action, but not in a survival action.

The estate argues that Ms. Otani, whether conscious or not, did experience the loss of 7.9 years of her life. The estate further argues that to hold she did not experience this loss "would be analogous to saying that a person who lies comatose for six months following a collision has suffered no compensable noneconomic loss because that person is not cognizant of any loss."[6] But the estate clearly was not seeking an award for any loss experienced by Ms. Otani in the few short hours between her injury and her death, and thus we are not asked to decide whether such damages would be available in the case of a person who was comatose for an extended period before death. Rather, the question is whether to award damages for a number of years after death. Because this was a loss which, in the trial court's words, "begins with the death," it is not a claim Ms. Otani would have been able to make if she were still alive. *See Federated Servs. Ins. Co. v. Estate of Norberg*, 101 Wn.

---

[5] Conscious pain and suffering can include the awareness that "life and everything fine that it encompassed was prematurely ending." *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 837-38, 699 P.2d 1230 (1985).

[6] Resp't's Br. at 3.

App. 119, 125-27, 4 P.3d 844 (2000) (estate cannot recover for son's loss of prospective inheritance because he could not have recovered it if he were still alive), *review denied*, 142 Wn.2d 1025 (2001). In a survival action, shortened life expectancy is relevant "only to the extent it affects the loss of value of a decedent's future earning capacity." *Wooldridge*, 96 Wn.2d at 667.

The point is well explained in a case the *Wooldridge* court found persuasive, *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 393 A.2d 1188 (1978), cited in *Wooldridge*, 96 Wn. 2d at 665. In *Willinger*, a five-year-old boy died while under anesthesia. The father brought wrongful death and survival actions and sought separate damages for the boy's shortened life expectancy. The trial court instructed the jury that it could consider the boy's loss of amenities or pleasures of life as part of its award of damages. The Pennsylvania Supreme Court held the instruction erroneous because such an award would be the equivalent of damages for the loss of life itself:

> Thus, to a large extent it has been the plaintiff's consciousness of his or her inability to enjoy life that we have compensated under the rubric of "loss of life's pleasures". Unlike one who is permanently injured, one who dies as a result of injuries is not condemned to watch life's amenities pass by. Unless we are to equate loss of life's pleasures with loss of life itself, we must view it as something that is compensable only for a living plaintiff who has suffered from that loss.

*Willinger*, 393 A.2d at 1191.

■ Our survival statutes preserve claims that a living person could have brought; that is, they govern only "predeath damages." *Hatch v. Tacoma Police Dep't*, 107 Wn. App. 586, 590, 27 P.3d 1223 (2001). They do not create claims on behalf of dead persons for the loss of life itself. Ms. Otani did not suffer any noneconomic "predeath damages" as a result of her fatal injury and thus no claim for such damages survived to her personal representative.

The judgment is reversed and remanded for revision consistent with this opinion.

KENNEDY and AGID, JJ., concur.

Review granted at 149 Wn.2d 1026 (2003).